Daniel J. Herling (SBN 103711)
Edward H. Davis (SBN 88210)
**DUANE MORRIS LLP**
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-Mail:   djherling@duanemorris.com
          ehdavis@duanemorris.com

Attorneys for Plaintiffs
EDDY DOMINGUEZ, NEWTON BUI, TAN
NGUYEN and LICINO VALINO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EDDY DOMINGUEZ, NEWTON BUI, TAN NGUYEN and LICINO VALINO.<br><br>Plaintiffs,<br><br>v.<br><br>ANDREW CORPORATION,<br><br>Defendant. | Case No.: C 07-04679 CW<br><br>**DECLARATION OF EDDY DOMINGUEZ IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER ON ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Dept:          2, 4th Floor<br>Judge:         Claudia Wilken<br>Complaint Filed:   September 11, 2007 |

I, Eddy Dominguez, declare:

1.   I am a plaintiff in this matter. I am a resident of the State of California over the age of 18 years. I am aware of the following facts of my own personal knowledge. If called as a witness, I could and would competently testify to the facts contained in this declaration of my own personal knowledge.

2.   I was a shareholder in Cell Site Industries, Inc. ("CSI") and was also the seller's agent and the seller's signatory to the Stock Purchase Agreement ("SPA") between Andrew Corporation and CSI. As such, I was involved in the negotiations of the SPA and am aware of its terms and conditions.

1

DECLARATION OF EDDY DOMINGUEZ IN SUPPORT OF TRO                                     CASE NO. C 07-04679 CW
DM1\1189868.1

3.      I am currently the Business Unit Manager for ACMC, the Andrew formed business unit comprised of CSI former personnel.

4.      The SPA entered into between CSI and Andrew included a negotiated term that out of the total purchase price of $21.5 million. $14 million was based on earn-outs in years one through three. The earn-out provision was agreed upon at the insistence of Andrew in order to insure that CSI personnel would remain as employees of ACMC, the Andrew formed business unit for at least a period of three years.

5.      During the course of negotiations, Andrew representatives were aware that the earn-out was a critical element of the SPA and that we needed some assurances to proceed with the SPA. Andrew representatives advised me that Andrew would put significant resources behind development of an Operating Agreement (also known as the operational plan of record) and would fully support Plaintiffs with adequate headcount and capital resources. Andrew refused to officially incorporate the Operating Agreement in the SPA, but rather agreed with us to develop an operational plan of record. During the course of my employment with ACMC, the Andrew formed business unit comprised of CSI former personnel, I was specifically advised by Andrew personnel including, but not limited to, my immediate supervisor, Richard De Felice, that it was Andrew's position that only the operational plan of record governed our ability to meet the earn-out thresholds and that the SPA was not relevant.

6.      In mid-August 2006, we learned for the first time that Andrew had in fact been engaged in negotiations to be sold, despite specifically apprising us to the contrary. At that time, Andrew assured me that CSI, now ACMC, had Andrew's full support and that the promised resources would be delivered. These resources were not delivered and negotiations, unbeknownst to me at the time, continued with CommScope, Inc.

7.      Andrew representatives and myself drafted the Operating Agreement for the purpose of outlining operational support (headcount and capital investment) levels adequate to allow us to meet or exceed the earn-outs threshold criteria necessary to collect a substantial portion of the total sales price. However, Andrew failed to fulfill its obligations pursuant to the operating agreement which made it extremely difficult if not impossible for ACMC to meet the criteria necessary for

DECLARATION OF EDDY DOMINGUEZ IN SUPPORT OF TRO         CASE NO. C 07-04679 CW
DM1\1189868.1

Plaintiffs to be paid their earnings. The Plaintiffs, by virtue of "sheer brut force," were able to achieve the first year earn-out targets. However, Andrew's continuing failure to perform under the Operating Agreement and Andrew management directives to sacrifice all future operating income and revenue targets for short term objectives make it all but impossible to meet the year two and year three earn-out objectives. Specifically, Andrew's refusal to provide headcount in year one severely handicapped our ability to undertake the research and development as well as to develop the sales team that would allow us to continue to keep current with the marketplace.

8. On August 27, 2007, Andrew announced that it had reached an agreement to be acquired by CommScope, Inc. In light of its pending acquisition, Andrew management has directed myself as Business Unit Manager for ACMC and its operation and sales force to focus all of our efforts on maximizing fourth quarter fiscal year 2007 revenues, ending on September 30, 2007, at the expense of future revenues.

9. During the course of my employ with ACMC, I have been apprised by Andrew representatives. including my immediate supervisor, Richard de Felice, that should I or any of my colleagues bring an action against Andrew to enforce the terms and conditions of the SPA that we would face severe consequences. I am concerned that upon the filing of the lawsuit, that my colleagues and myself will be terminated from ACMC and/or relegated to positions that would prohibit us from meeting the earn-out criteria. I am confident that had we had the necessary headcount and capital investment, we would have met the earn-out criteria.

10. In the event that Andrew sells or spins off a business unit including ACMC, we are also at risk. Due to the Andrew management directives to preclude ACMC from having the necessary headcount and operational capital, we face the real threat of loss of prospective customers and/or goodwill that we have developed over the past several years.

11. I am therefore requesting that this court issue a temporary restraining order to enjoin Andrew from taking any further action that would interfere with the operational plan of record

///

///

3

1 | including, but not limited to, terminating the plaintiffs' employment or making management
2 | decisions that would preclude us from having an opportunity to meet the earn-out criteria.
3 |     I declare under penalty of perjury under the laws of the State of California that the foregoing
4 | is true and correct. Dated this __12__ day of September 2007.

*/s/ Eddy Dominguez*
EDDY DOMINGUEZ

---

DECLARATION OF EDDY DOMINGUEZ IN SUPPORT OF TRO      CASE NO. C 07-04679 CW
DM1\1189868.1