IVOR SAMSON (SBN 052767)
isamson@sonnenschein.com
MARY KAY LACEY (SBN 142812)
mlacey@sonnenschein.com
HILLARY NOLL KALAY (SBN 233173)
hkalay@sonnenschein.com
SONNENSCHEIN NATH & ROSENTHAL LLP
525 Market Street, 26th Floor
San Francisco, CA 94105-2708
Telephone: (415) 882-5000
Facsimile: (415) 882-0300

Attorneys for Defendant
ANDREW CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| EDDY DOMINGUEZ, NEWTON BUI, TAN NGUYEN, and LICINO VALINO, <br><br> Plaintiffs. <br><br> v. <br><br> ANDREW CORPORATION, <br><br> Defendant. | Case No. C 07-04679 CW <br><br> **ANDREW CORP.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT IN FAVOR OF ARBITRATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: November 29, 2007 <br> Time: 2:00 p.m. <br> Courtroom: 2, Fourth Floor <br> Honorable Claudia Wilken |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    STATEMENT OF FACTS ................................................................... 3

     A.    The Crux of Plaintiffs' Dispute Involves Anticipatory Damages Related To Whether Future Earn-Out Payments Will Be Realized Under The Terms Of The Agreement. .................................................................. 3

     B.    Plaintiffs Allegations Concerning A Purported "Operating Agreement" Are Likewise Directly "Related" To And "Arise Out Of" The Stock Purchase Agreement. ............................................................................ 4

     C.    Plaintiffs' Additional Allegations Likewise "Arise" From And Relate to The Agreement. .................................................................................. 5

     D.    The Stock Purchase Agreement Broadly Mandates Arbitration Of Claims Arising Out Of And Related To The Agreement, Including Claims Involving Facts Occurring Prior To Or After Execution Of The Agreement. ............................................................................................. 6

     E.    Procedural History .............................................................................. 7

III.   ARGUMENT ..................................................................................... 9

     A.    All Claims Against Andrew Should Be Dismissed Because They Are Subject To The Mandatory Arbitration Provisions Of The Agreement. .............. 9

         1.    Dismissal Of This Entire Action Is Appropriate Based On The Language Of The Agreement And The Presumption In Favor Of Arbitration. ............................................................................ 9

         2.    Because Plaintiffs' Breach Of Contract Claims Are Directly Premised On The Language Of The Agreement, They Necessarily "Arise Out Of" And Are "Related" To The Agreement. ........................................................................... 11

         3.    Plaintiffs' Fraud and Intentional and Negligent Misrepresentation Claims Must Be Dismissed Because They "Touch Matters" Covered By The Arbitration Provision. ...................... 11

         4.    Plaintiffs' Intentional And Negligent Interference With Prospective Economic Relations Claims Must Also Be Dismissed In Favor Of Arbitration. ......................................... 12

         5.    Plaintiffs' Unjust Enrichment Claim Does Not Prevent Dismissal. ................................................................................ 13

         6.    Plaintiffs' Claim For Declaratory Relief To "Enjoin" Plaintiff From "Continuing To Breach The Agreement" Cannot Be Used To Circumvent Arbitration. .................................................... 14

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

i

ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION

B.    In The Alternative Of Dismissal, And To The Extent The Court Retains Jurisdiction Of Any Claim For Injunctive Relief, Arbitration On All Other Claims Should Be Compelled And The Case Should Be Stayed. ............ 16

IV.    CONCLUSION.................................................................................................... 17

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Boston Telecomm. Group, Inc. v. Deloitte Touche Tohmatsu,*
  278 F. Supp. 2d 1041 (N.D. Cal. 2003) ...................................................................12, 16

*Boston Telecomm. Group,*
  278 F. Supp. 2d at 1049......................................................................................................16

*Bowlby v. Carter Manufacturing Corp.,*
  138 F. Supp. 2d 182 (D. Mass. 2001) ................................................................................10

*Branch v. Tunnell,*
  14 F.3d 449 (9th Cir. 1994)..................................................................................................2

*Dennis L. Christensen Gen. Building Contractor, Inc. v. Gen. Building Contractor, Inc.,*
  952 F. 2d 1073 .....................................................................................................................12

*FCE Benefit Administrators, Inc. v. George Washington University,*
  209 F. Supp. 2d 232 (D.D.C. 2002) ...................................................................................15

*Germaine Music v. Universal Songs of Polygram,*
  275 F. Supp. 2d 1288 (D. Nev. 2003) ............................................................................9, 12

*Homestake Lead Co. of Missouri v. Doe Run Resources Corp.,*
  282 F. Supp. 2d 1131 (N.D. Cal. 2003) ....................................................................10, ,12, 16

*In re National Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litigation,*
  636 F. Supp. 1138 (C.D. Cal. 1986) ..................................................................................14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
  473 U.S. 614 (1985) ............................................................................................................12

*Moses H. Cone Mem. Hospital v. Mercury Construction,*
  460 U.S. 1 (1983) ................................................................................................................10

*Optinrealbig.com, LLC v. Ironport Systems, Inc.,*
  323 F. Supp. 2d 1037 (N.D. Cal. 2004) .............................................................................14

*Pakideh v. Ahadi,*
  99 F. Supp. 2d 805 (E.D. Mich. 2000) ..............................................................................15

*Republic of Nicaragua v. Standard Fruit Co.,*
  937 F.2d 469 (9th Cir. 1991), *cert. denied,* 503 U.S. 919 (1992) .....................................10

*Sparling v. Hoffman Construction Co., Inc.,*
  864 F.2d 635 (9th Cir. 1988)...........................................................................................9, 12

*The Pantry, Inc. v. Stop-N-Go Foods, Inc.,*
  777 F. Supp. 713 (S.D. Ind. 1999) .....................................................................................15

*Thinket Ink Information Resources, Inc. v. Sun Microsystems,*
  368 F.3d 1053 (9th Cir. 2004)...............................................................................................9

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION**

*Wolsey, Ltd. v. Foodmaker, Inc.*
   144 F 3d 1205 (9th Cir. 1998) ............................................................................10

## STATE CASES

*Eugene N. Gordon, Inc. v. La-Z-Boy, Inc.*,
   2007 WL 1101456 (E.D. Cal. April 12, 2007) ...................................................15

*Johnston v. Beazer Homes Texas, L.P.*,
   2007 WL 708555 (N.D. Cal. March 2, 2007) .........................................9, 11, 16

*Kinghorn v. Citibank, N.A.*,
   1999 WL 30534 (N.D. Cal. Jan. 20, 1999) .........................................................15

## FEDERAL STATUTES

9 U.S.C. § 2 ...........................................................................................................9, 10

9 U.S.C. § 3 ...............................................................................................................17

9 U.S.C. § 4 ...........................................................................................................10,17

Fed. R. Civ. P. 12(b)(6) ......................................................................................1, 2, 9

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION**

1

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on November 29, 2007 at 2 p.m. in Courtroom 2 of this Court, located at 1301 Clay Street, Oakland, California 94612, Defendant Andrew Corporation ("Andrew") will move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing all claims asserted against it by Plaintiffs Eddy Dominguez, Newton Bui, Tan Nguyen and Licino Valino (collectively, "Plaintiffs") in Plaintiffs' Complaint, in favor of arbitration.

PLEASE TAKE FURTHER NOTICE THAT the grounds for this motion are as follows: Plaintiffs' lawsuit is properly dismissed in favor of arbitration because (1) each of the substantive claims advanced in Plaintiffs' Complaint directly "relate to" and "arise out of" the Stock Purchase Agreement entered into between Plaintiffs and Andrew; and (2) the Agreement contains a broadly worded arbitration provision requiring that such disputes be resolved through arbitration, regardless of whether the facts upon which the claim is based "occurred prior to or after the execution" of the Stock Purchase Agreement.

This motion is based on this notice of motion and the memorandum of points and authorities in support thereof, the Declaration of Mary Kay Lacey, the pleadings, files and records on file in this action, and any other matters as may be properly before this Court.

## I.    INTRODUCTION

Plaintiffs are former shareholders of a company called Cell Site Industries ("Cell Site"), which was purchased by Andrew Corporation in April 2006. Pursuant to the terms of the Stock Purchase Agreement (the "Agreement"), Plaintiffs became "key employees" of Andrew. Although Plaintiffs remain employed by Andrew, they have brought the instant action asserting that Andrew has failed to live up to the terms of their "Agreement." The Complaint does not, however, assert that Plaintiffs have the right to have this dispute resolved in Federal Court. They do not.

Instead, the parties' Agreement contains a broad and unambiguous provision mandating that arbitration "shall be the sole and exclusive method for resolving any claim or dispute

1

("Claim") arising out of or relating to the rights and obligations acknowledged and agreed to in this Agreement, whether such Claim arose or the fact on which such Claim is based occurred prior to or after the execution and delivery of this Agreement." (Declaration of Mary Kay Lacey ("Lacey Decl."), Exh. A, Section 10(o), filed concurrently herewith.)[1] As a result, and as summarized below, because each of Plaintiffs' claims directly "relate" to and "arise out of" the Agreement, they must be arbitrated.

Specifically, Plaintiffs assert that Andrew failed to make certain "deposits" and "payments" as required under the terms of the Agreement; failed to provide the "necessary headcount and other resources" necessary to allow Plaintiffs to be paid the "earn-out" contemplated within the Agreement; and made certain misrepresentations during the negotiations surrounding the Agreement. (*See* Complaint, ¶ 31, alleging breaches of ¶¶ 2(e), 2(g), 2(h) and 2(i) of the Agreement., and ¶ 34). In addition, Plaintiffs' "Request for Relief" further demonstrates that the claims "arise out of" the parties' Agreement. Plaintiffs seek monetary damages for Andrew's alleged misrepresentations and breaches of the Agreement, and request a declaration from the Court to "enjoin" Andrew from "breaching the SPA." (Complaint, pp. 13-14.)

In short, because the Stock Purchase Agreement forms the necessary predicate for each of the claims advanced in Plaintiffs' Complaint, and because the Agreement plainly mandates that disputes "related" to and "arising out of" the Agreement must be arbitrated, Andrew respectfully requests that the Court dismiss this action in favor of arbitration pursuant to Fed. R. Civ. P. 12(b)(6).[2]

---

[1] Because Plaintiffs did not attach the Agreement to their Complaint, it is properly submitted by Andrew. "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to a pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. Such consideration does not convert the motion to dismiss into a motion for summary judgment." *Branch v. Tunnell*, 14 F. 3d 449, 454 (9th Cir. 1994) (internal citations and quotations omitted) (overruled on other grounds).

[2] The single exception (or "carve out") to the Agreement's broad mandate compelling arbitration involves claims for injunctive relief to specifically enforce express terms of the Agreement. That provision, Section 10(n) of the Agreement is discussed *infra* at pp. 6-7.)

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION**

1

## II.    STATEMENT OF FACTS

2

### A.    The Crux of Plaintiffs' Dispute Involves Anticipatory Damages Related To Whether Future Earn-Out Payments Will Be Realized Under The Terms Of The Agreement.

3

4    On April 24, 2006, Plaintiffs and Andrew entered into the Stock Purchase Agreement

5 whereby Andrew purchased all of the outstanding capital stock of Cell Site Industries ("Cell

6 Site"). (Lacey Decl., Exh. A, Preamble, p. 1.)  Pursuant to the Agreement, Plaintiffs also

7 became employees of Andrew and each of the Plaintiffs began working in a unit comprised of

8 former Cell Site employees.  (Id., Exh. A, at Schedule 4(w); Complaint, ¶ 13.)

9    A central component of Plaintiffs' claim against Andrew centers on "earn-out"

10 provisions contained within the Agreement.  The Agreement provides that the purchase price for

11 Cell Site will be "subject to an upward adjustment" (for the benefit of Plaintiffs) "based on the

12 achievement of certain financial performance objectives" which are expressly set forth in and

13 controlled by the Agreement.  (Id., Exh. A, ¶ 2(g).)  Specifically, the Agreement states that if

14 Cell Site achieves a certain minimum revenue and operating income for each of the first three

15 years following execution of the Agreement, Plaintiffs will be entitled to an "earn-out." (Id.)

16 For example, in year one (which ended on April 24, 2007), in order for the Plaintiffs to receive

17 an earn-out, Cell Site's revenues had to reach a minimum of $8.7 million, and its operating

18 income had to reach a minimum of $3.9 million.  (Id. at Exh. A, ¶ 2(g)(i)(A).)  If these minimum

19 milestones were reached,  Plaintiffs could receive an earn-out anywhere between $4 million and

20 $5 million for year one.  (Id.)  Notably, and as set forth in their Complaint, Plaintiffs "achieved

21 the first year earn-out targets." (*See* Complaint, ¶ 26.)  As a result, the Complaint does not

22 assert a claim of "interference" by Andrew with respect to the year one earn-out period.

23    Rather, the Complaint alleges ***anticipatory*** damages related to the year two and year

24 three earn-out periods, which will end on April 24, 2008 and April 24, 2009, respectively.  As

25 with the year one earn-out period, the Agreement sets forth minimum amounts of revenue and

26 operating incomes Cell Site must reach in years two and three in order for Plaintiffs to receive

27 an earn-out.  (Id. at Exh. A, ¶ 2(g)(i)(B)-(C).)  Although Plaintiffs do not (and cannot) assert that

28 the year two and year three earn-outs are "ripe" for payment, they attempt to support their

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

3

anticipatory breach of contract claim by alleging that Andrew has not provided the "necessary headcount and other resources to accomplish the goals necessary for Plaintiffs to be paid the [future] earn-out" described under the Agreement. (Complaint, ¶31.)

Significantly, however, the terms of the Agreement make clear that Andrew has no obligation to supply any particular "headcount" or any other "resources" to Cell Site. Indeed, after describing the milestones necessary to achieve the earn-outs contemplated by the parties, the Agreement clarifies that:

> The Parties acknowledge and agree that [Andrew] shall have full control and discretion with respect to the decisions related to [Andrew], including, without limitation, its operations, budgeting, marketing, and business scope (collectively the "Buyer Decisions") and no Buyer Decision nor its effect on the Target Business [i.e., Cell Site] shall result in any amendment or expectation of amendment by the parties with respect to any of the terms under this Section 2(g)(iv), and such acknowledgment and agreement represents a material inducement to the Buyer [Andrew] entering into this Agreement.

(Lacey Decl., Ex. A, at ¶ 2(g)(iv).) In other words, not only does the Agreement make clear that Andrew reserved sole discretion to determine the business resources that would be provided to Cell Site, it further provides that the unfettered ability to exercise that discretion was "a material inducement" for Andrew in entering into the Agreement.[3]

**B.    Plaintiffs Allegations Concerning A Purported "Operating Agreement" Are Likewise Directly "Related" To And "Arise Out Of" The Stock Purchase Agreement.**

In an apparent effort to avoid the inescapable reality of the provision allowing Andrew full discretion in providing resources to Cell Site, Plaintiffs allege the parties agreed during the negotiations surrounding the Agreement that they would separately enter into a subsequent agreement, which Plaintiffs call an "Operating Agreement." Specifically, Plaintiffs allege that the Operating Agreement was to set forth details of the investment Andrew would make in Cell Site "in the form of headcount and capital equipment to assist [Cell Site] in reaching the

---

[3] In addition to the monetary damages asserted for earn-outs, Plaintiffs also claim monetary damages for various other purported breaches of the Agreement, including payment of "retention bonuses" and deferred payments related to the acquisition of certain software. (Complaint, ¶22).

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION**

milestones needed to receive the earn outs contemplated under the Agreement." (*See* Complaint, ¶ 18.) Notably, although Plaintiffs allege such an agreement exists, Andrew is unaware of any such subsequent agreement, it is not mentioned anywhere in the Agreement, and certainly no such supplemental agreement was supplied by Plaintiffs in support of their Complaint. Moreover, and not surprisingly, the Stock Purchase Agreement entered into between the parties contains an "integration" clause, which requires that any subsequent agreement purporting to amend the provisions set forth in the Agreement, shall be valid only if it "is in writing and signed by the Buyer and the Sellers." (Lacey Decl., Exh. A, ¶10(i).)

Thus, while Plaintiffs assert that Andrew has intentionally frustrated, or "knew that it would disrupt," a purported "Operating Agreement" to provide Cell Site with headcount and capital resources to assist Plaintiffs in meeting their earn-out objectives (Complaint, ¶¶ 47, 49, 52, 54), the fact is: (1) there is no allegation in the Complaint that a such a signed agreement exists as required under the terms of the Agreement; and (2) no such agreement is before the Court. In any event, the relevant point for purposes of this Motion is that even assuming the existence of a subsequent agreement that commits Andrew to supply certain "headcount" and "operating resources" to Cell Site, the allegations of the Complaint make clear that the Operating Agreement "relates" to the provisions of the Agreement (by adding obligations which amend the written terms of the Agreement), and is based on facts and claims that "occurred prior to and after execution of the Agreement. (Lacey Decl., Exh. A, ¶10(o).)

### C.    Plaintiffs' Additional Allegations Likewise "Arise" From And Relate to The Agreement.

In addition to the breach of contract and misrepresentations claims described above, Plaintiffs also assert that Andrew made false representations prior to entering into the Agreement with Plaintiffs by stating that Andrew was not involved in merger and acquisition discussions with any potential buyer during the time that the Agreement was being negotiated with Plaintiffs. (Complaint, ¶¶ 34, 41.) In addition, Plaintiffs' breach of implied covenant claim is based on the assertion that Andrew "failed to act honestly and in good faith towards Plaintiffs in performing its obligations pursuant to the [Stock Purchase Agreement]." (Id. at ¶ 59.) And finally, Plaintiffs also assert that as a result of Andrew's alleged misrepresentations

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

5

when negotiating the Agreement and failure to provide the headcount and capital resources that would enable Plaintiffs to receive earn-outs pursuant to the Agreement, Plaintiffs are entitled to a constructive trust, as well as a declaration from the Court that Andrew is "enjoined" from "violating the terms of the Stock Purchase Agreement." (Id. at ¶¶ 63, 68-70.)

**D.    The Stock Purchase Agreement Broadly Mandates Arbitration Of Claims Arising Out Of And Related To The Agreement, Including Claims Involving Facts Occurring Prior To Or After Execution Of The Agreement.**

As set forth above, the Agreement requires that arbitration will be the "sole and exclusive method for resolving any claim or dispute … arising out of or relating to the rights and obligations agreed to in [the Stock Purchase Agreement], whether such [c]laim arose or the facts on which such [c]laim is based occurred prior to or after the execution and delivery of [the] Agreement. (Lacey Decl., Exh. A, ¶ 10(o).)  In addition, with respect to any disagreement as to whether an earn-out is payable under the terms of the Agreement, the parties agreed that such a dispute would be resolved by arbitration. (Id., Exh. A, ¶ 2(g)(iii).)  Further highlighting the parties' intent and expectation that virtually all disputes would be resolved by arbitration, the Agreement sets forth a detailed arbitration procedure that provides the precise manner in which the arbitration will proceed. (Id., Exh. A, at Exhibit D.)[4]

The only exception to the broadly worded arbitration provision set forth in the Agreement involves a claim by either party to specifically enforce the Agreement through injunctive relief.  Section 10(n) of the Agreement provides that each of the parties "acknowledge and agree" that the other party "would be damaged irreparably in the event any of the provisions of this Agreement are not performed in accordance with their specific terms or otherwise are breached.  Accordingly, except as provided in Section 10(o) below, each of the Parties agrees

---

[4] For example, Exhibit D to the Agreement provides for a single arbitrator to be selected by the parties, or if there is no agreement, to be appointed by the American Arbitration Association. (Id., Exh. A, at Exhibit D, ¶ 2.).  There is very limited discovery permitted, and the arbitration itself is conducted in an expedited manner, with briefing and the hearing occurring over the period of only a few months. (Id., Exh. A, at Exhibit D, ¶ 3.)  Following the one day allotted for the arbitration, the arbitrator is required to make a final decision within 30 days of the hearing, with any award rendered final and non-appealable. (Id.)

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION**

1    that the other Parties shall be entitled to an injunction or injunctions to prevent breaches of the

2    provisions of this Agreement and to enforce specifically this Agreement and the terms and

3    provisions hereof in any court of the United States or any state thereof having jurisdiction over

4    the Parties and the matter ..." (Lacey Decl., Exh. A, ¶ 10(n).)  As these terms make clear, the

5    "carve out" provided in Section 10(n) narrowly applies only to injunctive relief claims seeking

6    to enforce specific "terms and provisions" of the Agreement.

7        However, as set forth above and further demonstrated below, the Agreement's carve out

8    provision does not apply here because each of the claims set forth in Plaintiffs' Complaint seek

9    monetary damages, or a claim for equitable (rather than injunctive) relief.  In addition, even if

10   Plaintiffs' Complaint sought injunctive relief, it could only seek to enforce the actual "terms and

11   provisions" set forth in the Agreement.  Yet, even the equitable relief claim advanced by

12   Plaintiff (i.e., for a declaration that Andrew be "enjoined" from breaching the Agreement by

13   failing to provide Cell Site with headcount and capital resources to assist Plaintiffs in meeting

14   their earn-out objectives (Complaint at ¶¶ 70, 71)), rests on language found nowhere in the

15   actual "terms and provisions" of the Agreement.

16   **E.    Procedural History**

17       Concurrent with the filing of their Complaint on September 11, 2007,[5] Plaintiffs also

18   sought injunctive relief against Andrew by filing a Motion for Temporary Restraining Order.

19   Plaintiffs' TRO asserted that Plaintiffs would suffer immediate and irreparable harm if the Court

20   did not issue an injunction to prevent Andrew from terminating or reassigning Plaintiffs from

21   their current positions with Andrew, and continuing to deprive Plaintiffs of the "headcount" and

22   "operating resources" necessary to allow Plaintiffs to reach their future (April 2008 and 2009)

23   earn-out objectives.  (*See* TRO, Memo of Points and Authorities, pp. 3-4.)  Presumably, Plaintiff

24

25   [5] As summarized above, the Complaint asserts the following eight causes of action:  (1) breach
     of contract; (2) fraud/intentional misrepresentation; (3) negligent misrepresentation; (4)
26   intentional interference with prospective economic relations; (5) negligent interference with
     prospective economic relations; (6) breach of implied covenant and good faith and fair dealing;
27   (7) unjust enrichment and imposition of constructive trust; and (8) declaratory relief to "enjoin"
     Andrew from breaching the Stock Purchase Agreement.

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

7

**ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION**

brought its request for injunctive relief in federal court on the basis of the "carve out" provision set forth in Section 10(n) of the Agreement.

Although Andrew did not have an opportunity to respond to the TRO (due to an agreement by the parties to "stay" the TRO pending efforts to settle the matter)[6], the Court summarily denied Plaintiffs TRO, by Order dated October 2, 2007, finding that Plaintiffs failed to "make a sufficient showing of likely success on the merits of their claims and of irreparable harm to justify granting the <u>ex parte</u> relief" sought.  (*See* Order Denying TRO, p. 2.)[7]  The Court denied Plaintiffs' Motion for Preliminary Injunction in the same Order, but without prejudice -- thereby allowing Plaintiffs to re-notice their Motion for Preliminary Injunction.  (Id.)  It is Andrew's understanding that Plaintiffs will re-notice their Motion for Preliminary Injunction on October 25, 2007, with a hearing scheduled for November 29, 2007.[8]  Defendant will oppose that Motion, and seek to have the instant Motion To Dismiss In Favor of Arbitration heard concurrent with Plaintiffs' Motion for Preliminary Injunction.

Significantly, as analyzed below, if the Court does not grant Plaintiffs' Motion for Preliminary Injunction, there will be no injunctive relief claim before the Court upon which Plaintiffs can assert they are entitled to keep this lawsuit in federal court.  Instead, given that each of the causes of action set forth in Plaintiffs Complaint "arise out of" and "relate" to the Agreement, the mandatory arbitration provisions set forth in Section 10(o) apply, and this case is properly dismissed in its entirety in favor of arbitration.

---

[6] See Lacey Decl., ¶ 3.

[7] The Court also summarily denied Plaintiffs' Application for Writ of Attachment for $1,250.000 in the October 2, 2007 Order.

[8] Lacey Decl., ¶ 4.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION**

III.   **ARGUMENT**

     A.   **All Claims Against Andrew Should Be Dismissed Because They Are Subject To The Mandatory Arbitration Provisions Of The Agreement.**

          1.   **Dismissal Of This Entire Action Is Appropriate Based On The Language Of The Agreement And The Presumption In Favor Of Arbitration.**

Where parties agree to arbitration, courts may dismiss all claims covered by the arbitration agreement pursuant to Federal Rule of Civil Procedure 12(b)(6). *Sparling v. Hoffman Constr. Co., Inc.,* 864 F. 2d 635, 638 (9th Cir. 1988) (affirming district court's dismissal of claims, as arbitration clause was broad enough to bar all of plaintiff's claims); *Johnston v. Beazer Homes Texas, L.P.,* 2007 WL 708555, *4 (N.D. Cal. March 2, 2007) (because the arbitration clause was valid and covered all claims brought by plaintiff, court granted defendant's motion to dismiss in favor of arbitration); *Germaine Music v. Universal Songs of Polygram,* 275 F. Supp. 2d 1288, 1299 (D. Nev. 2003) (court granted motion to dismiss where a valid arbitration agreement was entered into and all of plaintiff's claims fell under the scope of the agreement).  Indeed, and as the Ninth Circuit made clear in *Thinket Ink Information Resources, Inc. v. Sun Microsystems,* 368 F. 3d 1053, 1060 (9th Cir. 2004), it is not error for a district court to dismiss an action pursuant to Federal Rule of Civil Procedure 12(b)(6) where the claims asserted are subject to arbitration.  As the court explained, although the Federal Arbitration Act ("FAA") provides for a stay pending compliance with a contractual arbitration clause, a request for a stay is not mandatory.  *Id.*

The United States Supreme Court has also recognized the FAA's [9] strong policy of favoring arbitration agreements, and has held that federal courts are required to rigorously enforce an agreement to arbitrate.  *Moses H. Cone Mem. Hosp. v. Mercury Constr.,* 460 U.S. 1,

---

[9] The FAA governs contracts involving commerce.  9 U.S.C. § 2.  The FAA has been applied to a stock purchase agreement between a Massachusetts corporation and a New Hampshire citizen, as such facts supported that the agreement involved commerce.  *Bowlby v. Carter Mfg. Corp.,* 138 F. Supp. 2d 182, 186 n.1 (D. Mass. 2001).  The Agreement between Plaintiffs and Andrew here, likewise involves interstate commerce, as the Agreement is between a Delaware corporation with its principal place of business in Illinois, and California residents (Complaint, ¶¶ 1-5).

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

24-25 (1983) (there is a strong presumption in favor of arbitrability). In determining whether an arbitration provision applies, the court does not review the merits of the dispute, but limits its inquiry to whether a valid agreement to arbitrate exists and whether the dispute falls within the scope of the agreement to arbitrate. *See Republic of Nicaragua v. Standard Fruit Co.,* 937 F. 2d 469, 477-78 (9th Cir. 1991), *cert. denied,* 503 U.S. 919 (1992). If the answer to these questions is affirmative, the court must order the parties to arbitrate in accordance with the terms of the agreement. 9 U.S.C. § 4. Specifically, Section 2 of the FAA provides that:

> [a] written provision in a ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2.

The FAA further establishes that, "as a matter of federal law, *any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,* whether the problem at hand is the construction of the contract language itself or the allegation of waiver, delay or a like defense to arbitrability." *Wolsey, Ltd. v. Foodmaker, Inc.,* 144 F. 3d 1205, 1209 (9th Cir. 1998) (emphasis in original)(quoting *Moses H. Cone Hosp.,* 460 U.S. at 24-25). Moreover, in interpreting contract language such as that contained in the parties' Agreement here, the Ninth Circuit has expressly allowed arbitration provisions that are broadly worded to be liberally enforced. Specifically, in *Homestake Lead Co. of Missouri v. Doe Run Resources Corp.,* 282 F. Supp. 2d 1131, 1138 (N.D. Cal. 2003), the Court emphasized that "the preference for arbitration is particularly strong when the arbitration clause is broad," and expressly held that "clauses requiring arbitration of claims 'arising out of or relating to' a contract are considered broad." That, of course, is precisely the language used in the Agreement between Plaintiffs and Andrew, which mandates that claims "arising out of or relating to the rights and obligations acknowledged and agreed to in this Agreement" must be arbitrated. (Lacey Decl., Exh. A at 10(o).) As explained below, because each of the claims set forth in Plaintiffs' Complaint "arise out of" or "relate[] to the rights acknowledged and agreed to" in the Agreement, this entire action is properly dismissed under Federal Rule of Civil Procedure 12(b)(6) in favor of arbitration.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION**

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

2.    **Because Plaintiffs' Breach Of Contract Claims Are Directly Premised On The Language Of The Agreement, They Necessarily "Arise Out Of" And Are "Related" To The Agreement.**

Plaintiffs base their breach of contract claim on the assertion that Andrew breached sections 2(e), (g), (h) and (i) of the Agreement. (Complaint, ¶ 31.) Patently, Plaintiffs' breach of contract claim implicates Andrew's performance under the Agreement and necessarily "aris[es] out of" and "relat[es] to the rights and obligations agreed to" in the Agreement. (*See* Lacey Decl., Exh. A, ¶ 10(o).) Further, because Plaintiffs' Complaint seeks monetary damages (not injunctive relief) for Andrew's alleged breaches of the Agreement (Complaint, ¶ 32 ), there can be no doubt that Section 10(o) of the Agreement mandates dismissal in favor of arbitration.

Similarly, Plaintiffs' breach of the implied covenant of good faith and fair dealing claim rests on the assertion that Andrew "failed to act honestly and in good faith towards Plaintiffs in performing its obligations pursuant to the Stock Purchase Agreement," entitling them to punitive damages (Complaint, ¶¶ 59, 61.) Because Plaintiffs essentially concede that this claim too is directly related to the terms of the Agreement, it is likewise covered by the arbitration clause, and properly dismissed.

3.    **Plaintiffs' Fraud and Intentional and Negligent Misrepresentation Claims Must Be Dismissed Because They "Touch Matters" Covered By The Arbitration Provision.**

In keeping with the strong preference for upholding arbitration provisions, courts have expressly recognized that lawsuits containing "mixed" allegations involving both "breach of contract" and "fraud" claims are also properly submitted to arbitration. *See, e.g., Johnston,* 2007 WL 708555 at *4 (dismissal of all claims, including breach of contract and fraud, where the arbitration clause covered "all claims or disputes … related directly or indirectly to or arising from this Agreement"); *Boston Telecomm. Group, Inc. v. Deloitte Touche Tohmatsu,* 278 F. Supp. 2d 1041, 1049 (N.D. Cal. 2003) (dismissal of all claims, including fraud and other allegations of wrongdoing where arbitration clause covered "[a]ny dispute arising out of the interpretation of this Agreement or with respect to the conduct of the Partnership business"); *Germaine,* 275 F. Supp. 2d at 1297 (dismissal of all claims where the arbitration clause covered "[a]ll disputes of any kind, nature or description whatsoever arising in connection with the terms

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    and conditions of this agreement, or arising out of performance thereof"); *see also Sparling*, 864

2    F. 2d at 638 (dismissal of all of a party's claims, including fraudulent inducement to enter into a

3    contract, where, as here, the arbitration clause was broadly worded).

4          These cases are also in accord with the principle that arbitration will be compelled even

5    where plaintiff's factual allegations only "touch matters" covered by the contract containing the

6    arbitration clause. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614,

7    624 n. 13 (1985) (noting that "insofar as the allegations underlying the statutory claims touch

8    matters covered by the enumerated articles, the Court of Appeals properly resolved doubts in

9    favor of arbitration"). The court may deny arbitration only if "it may be said with positive

10    assurance that the arbitration clause is not susceptible of an interpretation that covers the

11    asserted dispute. Doubts should be resolved in favor of coverage." *Homestake,* 282 F. Supp. 2d

12    at 1138 (internal citations omitted); *see also Dennis L. Christensen General Building*

13    *Contractor, Inc. v. General Building Contractor, Inc.*, 952 F. 2d 1073, 1076-77 (9th Cir. 1991).

14          Here, Plaintiffs' fraud and intentional and negligent misrepresentation claims do more

15    than simply "touch matters" covered by the parties' Agreement; they are inextricably

16    intertwined with the Agreement. Specifically, Plaintiffs assert (1) that Andrew made false

17    representations during negotiations preceding execution of the Agreement (Complaint, ¶¶ 34,

18    39, 41, 45); and (2) that following execution of the Agreement, they entered into an "Operating

19    Agreement" amending the Agreement and detailing the obligations required by Andrew (i.e., to

20    provide "headcount" and "capital resources") to assist Plaintiffs in meeting the earn-out

21    provisions set forth in Section 2(g) of the Agreement (Complaint, ¶¶ 18, 34, 41). These

22    allegations are dispositive in determining the arbitrability of Plaintiffs' claims, because the

23    Agreement expressly provides that claims "relating" to and "arising out of" the Agreement --

24    whether based on facts that "occurred prior to or after the execution" of the Agreement -- are

25    subject to mandatory arbitration. (Lacey Decl., Exh. A, ¶10(o).)

26          **4.    Plaintiffs' Intentional And Negligent Interference With**
         **Prospective Economic Relations Claims Must Also Be Dismissed**
27         **In Favor Of Arbitration.**

28          Plaintiffs assert that Andrew intentionally frustrated, or "knew that it would have

disrupted," the alleged "Operating Agreement" detailing Andrew's purportedly "headcount" and

"capital resources" obligations.  (Complaint., ¶¶ 47, 49, 51, 52, 54, 56.)  However, Plaintiffs

nowhere assert that they have any such signed "Operating Agreement" that amends the

provisions set forth in the Agreement, and the Agreement itself certainly contains no reference

to such an agreement.  This omission is significant because the Agreement specifically states

that Andrew has full control and discretion with respect to decisions relating to its business,

including its operations (i.e., headcount decisions), as well as its budget (i.e., the expenditure of

capital to support Cell Site).  (Lacey Decl., Exh. A, ¶ 2(g)(iv).)  In any event, whether this

subsequent agreement exists or not, the question raised by Plaintiffs' causes of action for

interference with prospective economic relations can only be resolved with reference to the

language of the Agreement; and (assuming parole evidence is admitted) the negotiations that

took place between Plaintiffs and Andrew "prior" to and "after" execution of the Agreement.

     In addition, the damages asserted as a result of Andrew's purported failure to provide the

headcount and capital resources anticipated by Plaintiffs "relate" directly to whether Plaintiffs

will meet the criteria necessary to achieve earn-out payments in April 2008 and April 2009.  Yet,

the criteria for meeting the earn-out goals are expressly governed by the provisions set forth in

the Agreement (Lacey Decl., Exh. A, ¶ 2(g)), which specifically contemplate that any dispute

involving payment of the earn-out are to be resolved by arbitration.  (Id., Exh. A, ¶ 2(g)(iii).)

     As a result, Plaintiffs' claim for monetary damages due to Andrew's purported

interference with their prospective economic relations are directly "related" to and "arise out of"

the rights and obligations set forth in the Agreement, and are properly dismissed under Section

10(o) of the Agreement.

     **5.**    **Plaintiffs' Unjust Enrichment Claim Does Not Prevent Dismissal.**

     Plaintiffs assert that as a result of Andrew's alleged breach of the Agreement, alleged

misrepresentations while negotiating the Agreement, and alleged failure to provide the

headcount and capital resources that would enable Plaintiffs to receive earn-outs pursuant to the

Agreement, Plaintiffs are entitled to a constructive trust.  (Complaint, ¶¶ 63, 66.)  Importantly,

the arbitration provision of the Agreement is not limited to claims where the movant seeks

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105-2708
(415) 882-5000

1    damages; but instead broadly covers all claims or disputes "arising out of" or that "relate" to the

2    Agreement. (Lacey Decl., Exh. A, ¶10(o).) Moreover, a constructive trust is not the same as an

3    injunction, and thus is not subject to the provisions of Section 10(n) of the Agreement. This is

4    because injunctions are only issued where the harm is irreparable, and therefore cannot be

5    redressed by a legal or equitable remedy, *see Optinrealbig.com, LLC v. Ironport Systems, Inc.,*

6    323 F. Supp. 2d 1037, 1050 (N.D. Cal. 2004), whereas a constructive trust is an equitable

7    remedy. *See In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.,* 636 F.

8    Supp. 1138, 1173 (C.D. Cal. 1986).

9        Accordingly, because Plaintiffs' claim for unjust enrichment is covered under Section

10   10(o), not Section 10(n) of the Agreement's arbitration provision, this claim too is properly

11   dismissed in favor of arbitration.

12       **6.      Plaintiffs' Claim For Declaratory Relief To "Enjoin" Plaintiff
                   From "Continuing To Breach The Agreement" Cannot Be Used
13                 To Circumvent Arbitration.**

14       Plaintiffs' final cause of action seeks Declaratory Relief and asks the Court to "enjoin"

15   Andrew from "continuing to breach the Stock Purchase Agreement." Specifically, Plaintiffs'

16   request for Declaratory Relief asserts that the Court should "declare the rights and remedies of

17   the parties in that there are and will continue to be acts by Andrew that are harming and will

18   continue to harm Plaintiffs, including but not limited to Andrew's failure to provide Cell Site

19   with necessary headcount and capital resources, that would in turn allow Plaintiffs to meet the

20   criteria for the earn-out." (Complaint, ¶ 69). Patently, the Court cannot determine the rights and

21   remedies available under the Agreement without reviewing and interpreting the Agreement, and

22   thus this claim also falls squarely within the mandatory arbitration provision of the Agreement.

23   (Lacey, Decl., Exh. A, ¶10(o).)

24       Indeed, because declaratory relief regarding the interpretation of a contract necessarily

25   requires the court to interpret the contract itself, the claim for equitable relief is redundant and

26   need not even be addressed. *See Eugene N. Gordon, Inc. v. La-Z-Boy, Inc.,* 2007 WL 1101456,

27   *4 (E.D. Cal. April 12, 2007) (where a party seeks declaratory relief and a substantially similar

28   alternative remedy, such as damages for a breach of contract claim, the court may exercise its

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

14

1    discretion to dismiss the declaratory judgment claim). *Kinghorn v. Citibank, N.A.,* 1999 WL

2    30534, *7 (N.D. Cal. Jan. 20, 1999) (denied summary judgment on defendants first counterclaim

3    for declaratory relief on ground that adjudication of defendants' counterclaim for breach of

4    contract would simultaneously dispose of the question as to whether the agreement was valid);

5    *see also FCE Benefit Administrators, Inc. v. George Washington Univ.,* 209 F. Supp. 2d 232,

6    244 n.16 (D.D.C. 2002) (denied plaintiffs request for declaratory judgment, finding such relief

7    to be an unnecessary remedy for a breach of contract); *Pakideh v. Ahadi,* 99 F. Supp. 2d 805,

8    808-09 (E.D. Mich. 2000) (declaratory judgment request duplicative of simple breach of

9    contract action for damages and court thus denied motion to reconsider its decision to dismiss

10   the declaratory judgment action); *The Pantry, Inc. v. Stop-N-Go Foods, Inc.,* 777 F. Supp. 713,

11   718 (S.D. Ind. 1999) (declaratory judgment claim inappropriately raised, as the plaintiff may be

12   fully compensated if it prevails on the breach of contract claim).

13        Moreover, not only is the declaratory relief cause of action wholly unnecessary, it is

14   squarely at odds with the monetary damages asserted throughout Plaintiffs' Complaint.  Put

15   differently, regardless of what the Court may "declare" (or "enjoin") with respect to Andrew's

16   purported "headcount" and "capital resources" obligations, it is readily apparent that Plaintiffs'

17   Complaint seeks monetary damages arising out of these exact same claims.  (Complaint, ¶¶ 31,

18   32, 34, 39, 41, 45, 47, 51, 52, 56).  Indeed, the fact that damages are the appropriate remedy for

19   the allegations surrounding Plaintiffs' anticipatory failure to meet their year two and year three

20   earn-outs is nowhere better demonstrated than in the Complaint's claim for damages related to

21   Andrew's interference with Plaintiffs' prospective economic relations.  Obviously, if Plaintiffs'

22   fourth and fifth causes of action for "Intentional" and "Negligent" "Interference With

23   Prospective Economic Relations" can be compensated by an "amount to be proven at trial"

24   (Complaint, p.13), they cannot at the same time serve as the basis for Plaintiffs' claim for

25   "equitable" (or injunctive) relief.  As a result, and for each of the reasons set forth above,

26   Plaintiffs' claim that it is entitled to relief for Andrews alleged failure to provide "headcount"

27   and capital resources clearly "arises out of" and "relates" to the Agreement, and thus is subject

28   to mandatory arbitration under the Agreement. *See Homestake Lead Co.,* 282 F. Supp. 2d at

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

15

1138; *Boston Telecomm. Group*, 278 F. Supp. 2d at 1049; *Johnston*, 2007 WL 708555 at *4.

Finally, Plaintiffs' attempt to invoke the "carve out" provision found in Section 10(n) of the Agreement is unavailing for the additional reason that Section 10(n) is narrowly drafted to seek specific performance related to enforcement of "the terms and provisions" of the Agreement. Yet, nowhere does Plaintiff assert that the "headcount" and "capital resources" requirements which Andrew is purportedly obligated to provide are actual "terms" or "provisions" of the Agreement. This omission is telling in that it reveals Plaintiffs' equitable relief claim for what it is: a transparent attempt to avoid arbitration, which should not be condoned by this Court.

**B.      In The Alternative Of Dismissal, And To The Extent The Court Retains Jurisdiction Of Any Claim For Injunctive Relief, Arbitration On All Other Claims Should Be Compelled And The Case Should Be Stayed.**

As stated above, Andrew understands that Plaintiffs intend to re-notice their Motion For Preliminary Injunction on October 25, 2007, with a hearing date set for November 29, 2007. (Lacey Decl., ¶ 4.) Andrew will file an Opposition to the Motion, and is hopeful that the Motion will be denied. However, even if the Court grants the Motion and finds that injunctive relief is warranted, the Court should still compel arbitration of each of the claims set forth in Plaintiffs' Complaint, and stay the instant lawsuit. The FAA provides that if a suit is brought which is referable to arbitration, the court "shall … stay the trial of the action until such arbitration has been had," 9 U.S.C. § 3, and "shall make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. As discussed above, all of Plaintiffs' claims are covered by the Agreements' arbitration clause, as each claim directly "arise[s] out of or relate[s] to the rights and obligations" of the Agreement. (Lacey Decl., Exh. A, ¶ 10(o).) Accordingly, should the Court retain jurisdiction of Plaintiffs' request for preliminary injunctive relief, the Court should compel that all remaining claims be arbitrated and stay the litigation pending the outcome of arbitration.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION**

1

2   **IV.    CONCLUSION**

3         For the reasons set forth above, Plaintiffs' motion to dismiss in favor of arbitration

4   should be granted.

5

6   Dated:  October 25, 2007                              SONNENSCHEIN NATH & ROSENTHAL LLP

7

8

9                                                         By _____ /s/  MARY KAY LACEY _____

10                                                        MARY KAY LACEY
                                                          Attorneys for Defendant Andrew Corp.
11

12  27281168v2

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION**