# EXHIBIT A – PART 2

**Schedule 4(c)**

**Capitalization**

15,790 shares of the common stock of the Target are issued and outstanding.  The shareholders are as follows:

| Shareholder | Shares |
|---|---|
| Eddy Dominguez | 5,000 |
| Tan Nguyen | 5,000 |
| Newton Bui | 5,000 |
| Licinio Valino | 790 |

**Schedule 4(d)**

**Noncontravention**

The Target is required to obtain and has obtained the consent of landlords for the change in control under both the Lease dated November 17, 2004 between EBJ Partners, L.P. and the Target for the premises located at 1100 Auburn Street, Fremont, California 94538 and the Lease dated October 21, 2005 between Rreef America II REIT, MMM, a Maryland corporation, and the Target for the premises located at 1940 Milmont Drive, Milpitas, California 95035.

**Schedule 4(e)**

**Broker's Fees**

None.

**Schedule 4(f)**

**Title to Assets**

Certain assets located on the Target's premises are not owned by the Target, but rather are consigned, leased or financed by the Target as set forth below:

The following is a schedule of consigned equipment which is on the Target's premises but is owned by third parties:

| Quantity | Equipment | Consignor |
|---|---|---|
| 2 | Racal 6113E | Cingular |
| 1 | RBS 2206 Ericsson Base Station | Cingular |
| 1 | RBS 2308 Ericsson Base Station | Cingular |
| 1 | SC4812ET Motorola Base Station | Telmar |
| 1 | ModCel 2 | Telmar |
| 3 | ATP2 Test Stations | Andrew Corporation |
| 15 | Test Fixtures | Andrew Corporation |
| 2 | MAT-NA Test Stations | Andrew Corporation |
| 1 | Burn in rack | Andrew Corporation |
| 1 | DMC Microwave HOP | T-Mobile |
| 1 | RBS 2102 Ericsson Base Station | T-Mobile |
| 1 | True Position LMU | T-Mobile |

The following is a schedule of leased equipment, which are used under operating or capital leases:

| Quantity | Equipment | Lessor |
|---|---|---|
| 1 | PSA Spectrum Analyzer | TRS Rentelco |
| 1 | Network Analyzer | TRS Rentelco |

In addition, all copiers and printers located at the Target's premises are owned by Imagistics, Inc. and provided under the terms of a service contract. Monthly payments under the service contract have been approximately $700 to $800 per month.

The following is a schedule of financed equipment, which is subject to a lien in favor of the financier:

| Quantity | Equipment | Financier |
|---|---|---|
| 1 | Ford Econoline 380 Box Van | Ford Credit |

9

**Schedule 4(g)**

**Subsidiaries and Affiliates**

None.

**Schedule 4(h)**

**Financial Statements**

None.

**Schedule 4(i)**

**Events Subsequent**

(i)    The Target entered into a Sublease Agreement dated as of April 21, 2006 with Nano Coating Systems LLC for the premises located at 1100 Auburn Street, Milpitas CA. The Target has entered into an Acknowledgement Agreement with Eddy Dominguez with respect to payment obligations and ownership rights to a 2002 BMW 745 Li automobile. The Target has entered into an Acknowledgement Agreement with Tan Nguyen with respect to payment obligations and ownership rights to a 2004 BMW 745 Li automobile. The Target has entered into an Acknowledgement Agreement with Newton Bui with respect to payment obligations and ownership rights to a 2004 Mercedes Benz E320 automobile.

(ii)    The Target has received a $400,000 Purchase Order from Cingular.

(vi)    The Target has purchased the Software Tool for a purchase price of $450,000 pursuant to the terms of a Software Assignment and Purchase Agreement dated as of April 24, 2006 between the Target and David Stout.

(x)    The Target received an assignment of rights with respect to Intellectual Property in connection with the Software Assignment and Purchase Agreement dated as of April 24, 2006 between the Target and David Stout.

(xvi)    The Target has entered into the Acknowledgement Agreements with Messrs. Dominguez, Nguyen and Bui relating to payment obligations and ownership rights for automobiles outlined in Schedule 4(i)(i). The Target has entered in the Software Assignment and Purchase Agreement with David Stout for the transfer of the Software Tool outlined in Schedule 4(i)(vi). The Target has entered into a letter agreement with David Stout dated as of April 24, 2006 related to the payment of up to $200,000 in performance based compensation.

(xvii) The Target has hired one additional employee and extended an offer to one additional employee as follows:

| Employee | Base Compensation |
|---|---|
| Keith Nachampasak | $72,800 annually |
| Paul Ralston | $100,000 annually (beginning 4/28/06) |

(xviii) The Target has increased the base compensation for the following employees:

| Employee | Increase in Base Compensation |
|---|---|
| Ha Vu | Increased to $10.00 per hour |
| Tran Hoang | Increased to $11.50 per hour |
| Samay Choun | Increased to $12.00 per hour |
| Thinh Nguyen | Increased to $25.00 per hour |
| Isaac Sebhatu | Increased to $90,000 annually |

12

Quyen Nguyen                Increased to $60,000 annually

(xix) The Target has terminated the CellSite Industries, Inc. Retirement Plan and Trust dated December 21, 2005 as of April 22, 2006.

(xx)    The Target has entered an accrual of $60,000 for paid time off for the Sellers and Rita Dominguez.  The Target has entered an accrual of $10,000 for paid time off for other employees.

13

**Schedule 4(j)**

**Undisclosed Liabilities**

None.

**Schedule 4(k)**

**Legal Compliance**

None.

**Schedule 4(l)**

**Tax Matters**

The Target has not yet filed its Federal or California income Tax Return for the calendar year ended December 31, 2005. The Target has filed IRS Form 7004 requesting an automatic six (6) month extension of time to file its 2005 corporate tax return until September 15, 2006. The Target's California corporate income tax return is automatically extended for a period of seven (7) months pursuant to FTB Notice 92-11, and will be filed on or before October 15, 2006.

The Target has not yet paid the City Business Tax for the City of Milpitas which is expected to be approximately $350. This disclosure is for informational purposes and is not an exception to the Target's representations and warranties for purposes of the indemnification provisions of the Agreement.

The Target has not yet paid the Santa Clara county Property Tax, which is expected to be approximately $ 5,000. This disclosure is for informational purposes and is not an exception to the Target's representations and warranties for purposes of the indemnification provisions of the Agreement.

(ii)    List of tax filings:

The Target files federal and California state income tax returns.

The predecessor partnership filed a federal and California State Tax Return for the year ended December 31, 2003. The partnership filed a federal and California State Tax Return for 2004 for the period from January 1, 2004 to January 28, 2004. The corporation filed a federal and California State Tax Return for 2004 for the period from January 28, 2004 to December 31, 2004. The corporation will file a federal and California State Tax Return for the year ended December 31, 2005.

The corporation has filed federal and California state payroll Tax Returns for 2005.

Tax Year 2003:

       a.     Federal - Form 1065 U.S. Return of Partnership Income for the period of January 1, 2003 through December 31, 2003

       b.     State - California Form 565 Partnership Return of Income for the period of January 1, 2003 through December 31, 2003

Tax Year 2004

       a.     Federal - Form 1065 U.S. Return of Partnership Income for the period of January 1 through January 28, 2004;

               Form 1120 U.S. Corporations Income Tax Return for the period January 28, 2004 through December 31, 2004

        b.      State – California Form 565 Partnership Return of Income for the period of January 1 through January 28, 2004;

        California Form 100 California Corporation Franchise or Income Tax Return for the period of January 28 through December 31, 2004

The Target collects and remits sales tax on sales in California and files Quarterly Sales Tax Returns

   <u>Tax Year 2004</u>:

        BA Form 401-A State, Local, and District Sales and Use Tax Return for the quarterly period of October through December 2004

        BOE Form 401-A State, Local and District Sales and Use Tax Return for the quarterly period of July through September 2004

        BA Form 401-A State, Local and District Sales and Use Tax Return for the quarterly period of October June 1, 2004 through June 30, 2004

   <u>Tax year 2005</u>:

        BOE Form 402-A State, Local and District Sales and Use Tax Return for the periods of October through December 2005

        BOE Form 402-A State, Local and District Sales and Use Tax Return for the periods of July through September 2005

        BOE Form 402-A State, Local and District Sales and Use Tax Return for the period of April through June 2005

        BOE Form 402-A State, Local and District Sales and Use Tax Return for the period of January through March 2005.

The Target pays property tax to Santa Clara County and has filed Property Tax returns for fiscal year 2004-2005 and fiscal year 2005-2006.

   <u>Tax year 2004:</u>

        Alameda County – Form 571-L Alameda County Property Tax Return for fiscal year 2004 through 2005

   <u>Tax year 2005:</u>

        Alameda County – Form 571-L Alameda County Property Tax Return for fiscal year 2005 through 2006

None of the tax returns mentioned herein have been or currently are subject to an IRS audit.

(v)    Unpaid Taxes:

The Target may amend its Federal and California corporate income tax returns for the calendar year ended December 31, 2004 to reflect book and tax accounting adjustments consistent with generally accepted accounting principles.  This disclosure is for informational purposes and is not an exception to the Target's representations and warranties for purposes of the indemnification provisions of the Agreement.

The Target may amend its Fourth (4th) Quarter California sales tax return to reclassify selected revenue in a manner which could result in a negligible impact on the amount of sales tax due. This disclosure is for informational purposes and is not an exception to the Target's representations and warranties for purposes of the indemnification provisions of the Agreement.

**Schedule 4(m)**

**Leased Real Property**

List of leased or subleased real property:

The Target leases its current facilities comprising 54,440 square feet at 1940 Milmont Drive, Milpitas, California 95035.

The Target leases and previously occupied premises comprising 16,250 square feet at 1100 Auburn Street, Fremont, California 94538.  The Target has entered into a Sublease of those premises with Nano Coating Systems, LLC.

19

**Schedule 4(n)**

**Intellectual Property**

None.

## Schedule 4(n)(iii)

## Licenses Granted in the Ordinary Course of Business

None.

**Schedule 4(n)(iv)**

**Third Party Licenses and Sublicenses**

None.

**Schedule 4(n)(v)**

**Indemnification Provisions**

None.

**Schedule 4(n)(viii)**

**Form of Invention Contribution Agreement**

Attached.

## <u>Employee Confidential Information</u>
## <u>and Inventions Agreement</u>

Memorandum of Agreement by and between the undersigned, _____, hereinafter designated as "Employee", and CellSite Industries, Inc., a California corporation, hereinafter designated as "CellSite."

In consideration of Employee's employment by CellSite during such time as shall be mutually agreeable to CellSite and Employee, this Agreement being a condition thereof and ancillary thereto, CellSite and Employee hereby agree as follows:

1.      During employment by CellSite, Employee will have access to certain confidential information and materials, including but not limited to schematic drawings, process procedures, test specifications, customer and vendor information originated in CellSite or disclosed to CellSite by others under agreements to hold the same confidential ("Confidential Information"); and Employee may during the period of employment make, develop or conceive inventions, discoveries, concepts, ideas, information and improvements, either patentable or not, which relate to or are useful in the business or activities in which CellSite is or may become engaged, and which may or may not also constitute Confidential Information ("Inventions").

2.      Employee agrees not to utilize any such Confidential Information for his own benefit nor to disclose, disseminate, lecture upon or publish articles about any such Confidential Information to any one outside CellSite, or to any officer or employee of CellSite not also having access to such information, at any time either during or after employment by CellSite, unless CellSite expressly consents beforehand in writing.

3.      Employee agrees to disclose promptly, in writing if so requested, to the Chief Technology Officer, any Inventions that he may make, develop or conceive during the period of his employment by CellSite or by its predecessors or successors in business.  All such Inventions shall be and remain the property of CellSite.  Employee hereby assigns (and agrees to assign) to CellSite all Employee's rights, title and interest in any such Inventions, whether or not during the period of his employment such Inventions may be reduced to practice, and to execute all patent applications, assignments and other documents, and to take all other steps necessary, to vest in CellSite the entire right, title and interest in and to those Inventions and in and to any patents obtainable therefor in the United States and in foreign countries.

4.      If it chooses to prosecute applications for patent for any such Inventions, it being understood that it is not obligated to do so, CellSite shall assume the entire expense of preparing, filing and prosecuting such applications, through patent counsel appointed by CellSite.

5.      It is understood and agreed that CellSite shall have the royalty-free right to use, or to adapt and to develop in any way all Inventions conceived or made by Employee, whether or not patentable, including but not limited to processes, methods, formulas, and techniques, as well as improvements thereof or know-how related thereto, or not to use them at all should it so choose.

6.     All records and other material pertaining to Confidential Information, whether developed by Employee or others, shall be and remain the property of CellSite.  Upon termination of Employee's employment with CellSite, all documents, records, notebooks and other material of any kind pertaining to or containing Confidential Information then in Employee's possession, whether prepared by Employee or others, will be left with or returned to CellSite.

7.     Except as listed on Appendix A which is attached to this Agreement, Employee will not assert any rights to any inventions, discoveries, concepts or ideas, or improvements thereof or know-how related thereto, as having been made or acquired by Employee prior to being employed by CellSite, or since then, and not otherwise covered by the terms of this Agreement.

8.     Employee shall not be obligated to assign to CellSite any invention made by him while in CellSite's employ which does not relate to any business or activities in which CellSite is or may become engaged, except that he is so obligated if the same relates to or is based on confidential or proprietary information to which Employee shall have had access during and by virtue of his employment or arises out of work assigned to him by CellSite.  Nor shall Employee be obligated to assign any invention which may be wholly conceived by Employee after he leaves the employ of CellSite, except that he is so obligated if such invention shall involve the utilization of confidential or proprietary information obtained while in the employ of CellSite.  Nor shall Employee be obligated to assign any invention which relates to or would be useful in any business or activities in which CellSite is engaged if such invention was conceived and reduced to practice by Employee prior to his employment with CellSite; provided that all such inventions are listed at the time of employment on the attached Appendix A.

9.     Employee represents and warrants that his/her employment with CellSite does not and will not breach any agreement or duty which Employee has to anyone else to keep in confidence confidential information belonging to others.  Employee will not disclose to CellSite or use in its behalf any confidential information belonging to others.

10.    Employee acknowledges that any failure to carry out any obligation under this Agreement, or a breach by Employee of any provision herein, will constitute immediate and irreparable damage to CellSite, which cannot be fully and adequately compensated in money damages and which will warrant preliminary and other injunctive relief, an order for specific performance, and other equitable relief.  Employee also understands that other action may be taken and remedies enforced against the Employee.

11.    This Agreement supersedes any prior or contemporaneous agreement concerning assignment of patent rights or trade secrets between CellSite and Employee.

12.    Employee's obligations under this Agreement shall continue after termination of employment by CellSite.  This Agreement shall inure to the benefit of CellSite, its successors, assigns and designees, and is binding upon the assigns, executors and administrators and other legal representatives of Employee.

26

13.    This Agreement shall be construed in accordance with and governed for all purposes by the law of the State of California. In case any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. If, moreover, any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to time, duration, geographical scope, activity or subject, it shall be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall then appear.

IN WITNESS WHEREOF the parties have signed this agreement as of the _____ day of _____, 20____.

**CellSite Industries, Inc.**                [Employee

By: _____              By: _____

Its: _____


### Appendix A to Employee Confidential Information and Inventions Agreement

I represent that I have indicated on this Appendix all Inventions (as defined in the Agreement) in which I owned any right or interest prior to my employment with CellSite. I agree that any present or future Inventions not listed in this Appendix are subject to assignment under the attached Employee Confidential Information and Inventions Agreement.

| **Brief Description Of Inventions** | **Right, Title or Interest and Date Acquired** |
| --- | --- |



Dated: _____      Employee: _____

27

**Schedule 4(n)(xi)**

**Target Products and Software**

List and description of Target Products and Target Software:


**Name:**                Starlite Test System
Version                7.0
**Operating System:**    Windows XP


**Description:** Starlite Test System is a stimulus/response test system designed for test procedure development and execution. With the Starlite Test System, operators can control test execution sequences for diagnostic applications. The Starlite Test System includes a run time test executive application, developed in LabVIEW, which includes a modular architecture that enables users to perform diagnostic tests via a graphical user interface. Test sequencing is based on pass/fail results, and test results may be logged for later analysis.

**Schedule 4(o)**

**Tangible Assets**

List of equipment the Target needs to repair or upgrade and approximate cost:

2 8573E RF Network Analyzers (upgrade from 8573D), $22,000 each

1 Ericsson Racal upgrade and calibration, $17,010

1 Nokia Racal upgrade and calibration, $17,010

**Schedule 4(p)**

**Contracts**

(i)

1.     Lease Agreement by and between the Target and EBJ Partners, L.P., for office space located at 1100 Auburn Street, Fremont, CA and dated as of November 17, 2004

2.     Lease Agreement by and between the Target and Rreef America REIT II Corp. MMM, a Maryland corporation dated October 21, 2005

3.     Sublease Agreement by and between the Target and Nano Coating Systems, LLC dated April __, 2006

4.     Equipment Lease Agreement by and between the Target and TRSRenTelco dated November 4, 2005

5.     Equipment Lease Agreement by and between the Target and TRSRenTelco dated November 28, 2005

(ii)

6.     Blanket Purchase Order with Cingular Wireless, LLC dated June 8, 2005

7.     Blanket Purchase Order with Cingular Wireless, LLC dated September 22, 2005

8.     Blanket Purchase Order with Cingular Wireless, LLC dated November 7, 2005

9.     Blanket Purchase Order with Cingular Wireless, LLC dated January 24, 2006

10.    Blanket Purchase Order with Cingular Wireless, LLC dated January 30, 2006

11.    Blanket Purchase Order with TMO CA/NV LLC dba as T-Mobile USA dated November 4, 2005

12.    Blanket Purchase Order with Verizon Wireless dated December 27, 2005 in the amount of $10,000

13.    Blanket Purchase Order with Verizon Wireless dated December 27, 2005 in the amount of $5,000

14.    Blanket Purchase Order with Verizon Wireless dated December 27, 2005 in the amount of $20,000

(iii)

15.    Contribution Agreement by and among the Target and Eddy Dominguez, Tan Nguyen and Newton Bui dated January 28, 2004

30

(iv)

16. Offer letter from the Target to Rita Dominguez regarding the position of senior sales account manager dated May 3, 2004

17. Offer letter from the Target to Matthew Vo regarding the position of sales representative dated August 30, 2004

18. Offer letter from the Target to Rakly Dominguez regarding the position of sales account manager dated August 1, 2005

19. Offer letter from the Target to Grace Tahk regarding the position of sales account manager dated August 10, 2005

(v)

20. Equipment Lease Agreement by and between the Target and MetricTest dated November 4, 2005

21. Retail Installment Sales Contract by and between the Target and Mission Valley Ford, dated May 27, 2005

(vi)

22. Letter of Interest (the "LOI") by and between the Target and Andrew Corporation, a Delaware corporation ("Andrew"), dated January 23, 2006

23. Amendment Agreement to LOI by and between the Target and Andrew dated March 27, 2006

24. Second Amendment Agreement to LOI by and between the Target and Andrew dated April 12 , 2006

25. Confidentiality and Noncircumvention Agreement dated as of February __, 2006 by and between the Target and Tempest Telecom Solutions, LLC

26. Joint Non-Disclosure Agreement dated as of July 28, 2005 by and between the Target and the Buyer

27. Amendment Agreement dated as of March 27, 2006 by and between the Target and the Buyer

28. Employee Confidential Information and Inventions Agreement by and between the Target and Tan Nguyen dated September 23, 2005

29. Employee Confidential Information and Inventions Agreement by and between the Target and Rita Dominguez dated August 22, 2005

31

30. Employee Confidential Information and Inventions Agreement by and between the Target and Eddy Dominguez dated September 23, 2005

31. Employee Confidential Information and Inventions Agreement by and between the Target and Jerry Constance dated August 22, 2005

32. Employee Confidential Information and Inventions Agreement by and between the Target and Lieu Vu dated August 22, 2005

33. Employee Confidential Information and Inventions Agreement by and between the Target and Ha Vu dated August 22, 2005

34. Employee Confidential Information and Inventions Agreement by and between the Target and Kiu Vong dated August 22, 2005

35. Employee Confidential Information and Inventions Agreement by and between the Target and Huong Du Tran dated August 22, 2005

36. Employee Confidential Information and Inventions Agreement by and between the Target and Matt Vo dated August 22, 2005

37. Employee Confidential Information and Inventions Agreement by and between the Target and Rhus My Tran dated August 22, 2005

38. Employee Confidential Information and Inventions Agreement by and between the Target and Ngoc Tran dated August 22, 2005

39. Employee Confidential Information and Inventions Agreement by and between the Target and Kiet Tran dated December 5, 2005

40. Employee Confidential Information and Inventions Agreement by and between the Target and Belinda Trac dated August 22, 2005

41. Employee Confidential Information and Inventions Agreement by and between the Target and Grace Tahk dated August 22, 2005

42. Employee Confidential Information and Inventions Agreement by and between the Target and Osmond Rada dated August 22, 2005

43. Employee Confidential Information and Inventions Agreement by and between the Target and Lilibeth Rada dated August 22, 2005

44. Employee Confidential Information and Inventions Agreement by and between the Target and Trung Pham dated September 29, 2005

45. Employee Confidential Information and Inventions Agreement by and between the Target and Khang Pham dated August 22, 2005

46.    Employee Confidential Information and Inventions Agreement by and between the Target and Lisa Chan dated December 7, 2005

47.    Employee Confidential Information and Inventions Agreement by and between the Target and Samay Chhoun dated December 5, 2005

48.    Employee Confidential Information and Inventions Agreement by and between the Target and Quoc Chung dated August 23, 2005

49.    Employee Confidential Information and Inventions Agreement by and between the Target and Long Dang dated November 30, 2005

50.    Employee Confidential Information and Inventions Agreement by and between the Target and Rakly Dominguez dated August 22, 2005

51.    Employee Confidential Information and Inventions Agreement by and between the Target and Azure Edwards dated August 22, 2005

52.    Employee Confidential Information and Inventions Agreement by and between the Target and Alejandro Escobar dated November 30, 2005

53.    Employee Confidential Information and Inventions Agreement by and between the Target and Francisco Escobar dated November 30, 2005

54.    Employee Confidential Information and Inventions Agreement by and between the Target and Chi Huynh dated August 22, 2005

55.    Employee Confidential Information and Inventions Agreement by and between the Target and Tu A Huynh dated August 22, 2005

56.    Employee Confidential Information and Inventions Agreement by and between the Target and Anh Lam dated August 22, 2005

57.    Employee Confidential Information and Inventions Agreement by and between the Target and Thu Lam dated December 5, 2005

58.    Employee Confidential Information and Inventions Agreement by and between the Target and Keith Malone dated August 22, 2005

59.    Employee Confidential Information and Inventions Agreement by and between the Target and Florence Mecenas dated August 22, 2005

60.    Employee Confidential Information and Inventions Agreement by and between the Target and Sienna Mecenas dated August 22, 2005

61.    Employee Confidential Information and Inventions Agreement by and between the Target and Dana Nguyen dated December 14, 2005

33

62.  Employee Confidential Information and Inventions Agreement by and between the Target and Han Nguyen dated August 22, 2005

63.  Employee Confidential Information and Inventions Agreement by and between the Target and Huong Nguyen dated October 12, 2005

64.  Employee Confidential Information and Inventions Agreement by and between the Target and Nhan Nguyen dated December 5, 2005

65.  Employee Confidential Information and Inventions Agreement by and between the Target and Quyen Nguyen dated August 22, 2005

66.  Employee Confidential Information and Inventions Agreement by and between the Target and Thinh Nguyen dated November 18, 2005

67.  Employee Confidential Information and Inventions Agreement by and between the Target and Tony Nguyen dated December 5, 2005

68.  Employee Confidential Information and Inventions Agreement by and between the Target and Boris Pesochinskiy dated December 5, 2005

69.  Employee Confidential Information and Inventions Agreement by and between the Target and Keith Nachampasak dated April 24, 2006

(vii)

70.  Promissory Notes by and between the Target and each of Eddy Dominguez, Tan Nguyen and Newton Bui, as set forth on the ledger attached as Appendix 1 hereto

(x)

71.  Employment Agreement by and between the Target and Eddy Dominguez dated July 15, 2005

72.  Employment Agreement by and between the Target and Tan Nguyen dated July 15, 2005

73.  Employment Agreement by and between the Target and Newton Bui dated July 15, 2005

(xii)

74.  Small Business Logic QuickBooks Support Agreement by and between the Target and Small Business Logic, Inc. dated March 28, 2005

75.  Services Agreement with Pitney Bowes for postage.

76.  Service Agreement with Imagistics, Inc. for printer and copier service.

77.  Engagement Letter with M.D. Sassi Company relating to audit for 2004 and 2005.

78.   Engagement Letter with Duane Morris LLP relating to legal services.

79.   Administrative Services Agreement by and between Paychex Inc. and the Target dated December 6, 2005

80.   Operation Services Agreement by and between the Target and Omnipoint Communications Inc., a subsidiary of T-Mobile USA, Inc., dated August 2, 2005

81.   First Amendment to Operating Services Agreement by and between the Target and Omnipoint Communications Inc., a subsidiary of T-Mobile USA, Inc., dated April 1, 2005

**Appendix I**

**to Schedule 4(p)**

1.  Promissory Note dated November 30, 2005 from the Company to Eddy Dominguez in the principal amount of $75,709.46

2.  Promissory Note dated December 31, 2005 from the Company to Eddy Dominguez in the principal amount of $203,350

3.  Promissory Note dated November 30, 2005 from the Company to Tan Nguyen in the principal amount of $86,262.78

4.  Promissory Note dated December 31, 2005 from the Company to Tan Nguyen in the principal amount of $203,350

5.  Promissory Note dated November 30, 2005 from the Company to Newton Bui in the principal amount of $41,381.26

6.  Promissory Note dated December 31, 2005 from the Company to Newton Bui in the principal amount of $203,350

36

**Schedule 4(q)**

**Bank Accounts and Boxes**

List of bank accounts, purpose and use, and persons with access:

The Target maintains a deposit account with Bank of America 00988 18919. This account is a general operating account. Each of Eddy Dominguez, Newton Bui and Tan Nguyen are authorized signatories.

The Target maintains a deposit account with Bank of America 00988 1662943778. This account was to be used in connection with the CellSite Industries, Inc. Retirement Plan and Trust dated December 21, 2005, which the Target terminated as of April 22, 2006. Accordingly, this account will be closed. Each of Eddy Dominguez, Newton Bui and Tan Nguyen are authorized signatories.

The Target does not maintain lock boxes, safe deposit boxes or post office boxes.

37

## Schedule 4(r)

### Powers of Attorney

The Target has granted a power of attorney to Paychex, Inc. in connection with the filing of unemployment claims.

**Schedule 4(s)**

**Insurance**

List of insurance policies:

The Hartford, General Liability, policy number S1 SBQ TF9030

Financial Indemnity, Automobile Liability, policy number FCFICV1289286

The Hartford, Excess Umbrella Liability, policy number S1 SBQ TF9030

The Hartford, Business Personal Property, policy number S1 SBQ TF9030

State Fund Workman's Compensation Insurance, policy number 18350904-05.

## Schedule 4(t)

### Litigation

None.

**Schedule 4(u)**

**Service and Product Warranty**

List of Warranties:

The Target provides a 90 day repair or replace warranty on all products that it sells.

The Target provides a 6 month repair or replace warranty on all repair services on equipment repaired for value added resellers.

The Target provides a one year repair or replace warranty on all repair services on equipment repaired for carriers.

## Schedule 4(v)

### Service and Product Liability

None.

## Schedule 4(w)

## Employees

| Cellsite's Employee List as of April 24, 2006 | | | | |
|---|---|---|---|---|
| **Name** | | **Function** | | |
| **First Name** | **Last Name** | | **DOH** | **Pay Rate** |
| Newton | Bui | | Jun-03 | $220K/annual |
| Eddy | Dominguez | | Jun-03 | $220K/annual |
| Tan | Nguyen | | Jun-03 | $220K/annual |
| Quoc | Chung | Wireless-Sr Tech | Nov-03 | $19/hr |
| Licinio | Valino | | Nov-03 | 2900.52/2weeks |
| Anh | Lam | Wireless-Sr Tech | Dec-03 | 19/HR |
| Belinda | Trac | Sr Rework Tech-Wireless | Dec-03 | $14/hr |
| Khang | Pham | ULAM-Tech | Dec-03 | $14/hr |
| Ngoc | Tran | Quality Control-production | Jan-04 | $11/hr |
| Boris | Pesochinskiy | Scientist-R&D wireless | Jan-04 | $14/hr |
| Lilibeth | Rada | Quality Mgr/Doc control | Mar-04 | $14/hr |
| Rita | Dominguez | Acct Manager-Sales | May-04 | 2500/2 weeks |
| Kiet | Tran | Technician-Power Div | Jul-04 | $16/hr |
| Matt | Vo | Sales Manager | Sep-04 | 1384.62/2 weeks |
| Trung | Pham | IT Engr, Wireless Engr | Oct-04 | $18/hr |
| Sienna | Mecenas | Admin Assistant-AR, front desk | Oct-04 | $10/hr |
| Quyen | Nguyen | Accountant | Nov-04 | 2307.69/2weeks |
| Han | Nguyen | Technician-Power Div | Nov-04 | 1384.62/2 weeks |
| Lieu | Vu | Rework-tech | Mar-05 | $12/hr |
| Keith | Malone | Wireless-Sr Tech | May-05 | 23.90/hr |
| Dung Van | Tran | Rework-shipping | Jul-05 | $11/hr |
| Chi | Huynh | Rework tech | Jul-05 | $12/hr |
| Rakly | Dominguez | Acct Manager-Sales | Aug-05 | 1384.62/2 weeks |
| Hoang | Tran | Rework-tech | Aug- | $11.5/hr |

43

| | | | | |
|---|---|---|---|---|
| | | | 05 | |
| Tony | Nguyen | Rework tech | Aug-05 | $10/hr |
| Kiu | Vong | Rework-tech | Aug-05 | $12/hr |
| Ha | Vu | Rework-tech | Aug-05 | $10/hr |
| Isaac | Sebhatu | Software Engr | Aug-05 | 3461.54/2weeks |
| Grace | Tahk | Acct Manager-Sales | Aug-05 | 1384.62/2 weeks |
| Azure | Edwards | Admin Assistant-Doc control | Aug-05 | $17/hr |
| Phuong | Tran | Rework-tech | Sep-05 | $9/hr |
| Nhan | Nguyen | Rework-shipping | Sep-05 | $10/hr |
| Thu | Lam | Rework tech | Sep-05 | $9/hr |
| Huong | Nguyen | Rework tech | Sep-05 | $9/hr |
| Hue | Nguyen | Rework tech | Sep-05 | $9/hr |
| Samay | Chhoun | Shipping/receiving | Oct-05 | $12/hr |
| Thinh | Nguyen | Wireless-Sr Tech | Nov-05 | $25/hr |
| Alejandro | Escobar | Rework tech/shipping | Nov-05 | $10/hr |
| Francisco | Escobar | Rework tech/shipping | Nov-05 | $10/hr |
| Long | Dang | Rework tech | Nov-05 | $11/hr |
| David | Stout | R&D Manager | Nov-05 | 5192.31/2weeks |
| Lisa | Chan | Admin Assistant-AP/reports | Nov-05 | $13/hr |
| Tram | Tran | Rework-tech | Dec-05 | $9/hr |
| Dung | Huynh | Rework tech | Dec-05 | $9/hr |
| Dana | Nguyen | Rework tech | Dec-05 | $9/hr |
| My Ha | Nguyen | Admin Assistant-AR, front desk | Dec-05 | $10/hr |
| Soeur | Sang | Shipping/receiving | Jan-06 | $10/hr |
| Tung | Duong | Rework tech | Jan-06 | $8.50/hr |
| Dan | Ho | Rework tech | Jan-06 | $9/hr |
| Maria | Molina | Rework tech | Feb-06 | $8.5/hr |
| Hieu | Pham | Rework tech | Feb-06 | $8.50/hr |

| Stephanie | Cabauatan | Procurement Mgr | Mar-06 | $17/hr |
|---|---|---|---|---|
| Tuyet | Do | Rework-tech | Mar-06 | $8.50/hr |
| Thu Bich | Nguyen | Rework-tech | Mar-06 | $12/hr |
| Lam | Vu | Rework-tech | Mar-06 | $9/hr |
| Phuc | Nguyen | Rework-tech | Mar-06 | $9/hr |
| Paul | Ralston | Sr Software Engineer | Apr-06 | 100K/year |
| Keith | Nachampasak | Systems Engineer | Apr-06 | $2800/2weeks |
| Hector | Martinez | Rework tech/shipping | Dec-06 | $9.50/hr |

Any arrangements regarding other compensation to employees of Target, including commissions, bonuses and fringe benefits, has been previously provided in writing to Buyer.

**Schedule 4(x)**

**Employee Benefits**

List of employee benefit plans:

The Target does not maintain any stock option, stock appreciation right, 401(k), ERISA or other compensation plan, although the Target is evaluating the possibility of offering a 401(k) plan.

The Target maintains a sales commission plan which provides compensation to certain employees based on a percentage of revenues.

Standard employee benefits are as follows:  salaried employees receive 2 weeks paid vacation. Salaried and hourly employees have the option of purchasing medical and dental coverage through Pacificare HMO/PPO and Delta Dental.

None of the Target's employees are part of a union or collective bargaining arrangement.  The Target has never had a labor dispute, work stoppage or workers' compensation claim.

Eddy Dominguez, Tan Nguyen and Newton Bui have employment agreements with the Target as identified at number 71 through 73 in Schedule 4(p).

**Schedule 4(y)**

**Guaranties**

None.

**Schedule 4(z)**

**Environment, Health, and Safety**

The Sellers have been informed that there is asbestos in the floor tiles in the premises located at 1940 Milmont, Milpitas, California. The Target and Sellers believe that the asbestos has not caused an occurrence of, and will not result in, a material liability to the business of Target nor has it presented nor does it present a significant health risk to any individuals who perform services on, or otherwise have come, or will come, in contact with such site, due to among other things the separation of the asbestos from the operational areas therein.

This disclosure is for informational purposes and is not an exception to the Target's representations and warranties for purposes of the indemnification provisions of the Agreement.

48

**Schedule 4(aa)**

**Absence of Certain Business Practices**

None.

**Schedule 4(bb)**

**Suppliers**

None.

**Schedule 4(cc)**

**Customers**

List of the Target's 20 largest customers:

Alpine Power Systems

Andrew Corp.

AT&T

Cellular One

Cingular

CTDI

Diversitec

Electronauts

Group Midwest, Inc

Mae Tec Power

PC Plus Innovations Inc

Plus One Communications Inc

Somera

System Engineering International

Telmar

Tempest Telecom

Trip Wireless

Verizon

West World Telecom Corporation

Zhone Technologies

**Schedule 4(dd)**

**Government Contracts**

None.

**Schedule 4(ee)**

**Closing Working Capital**

None.

**Schedule 4(ff)**

**Exclusivity Matters**

The Target received a term sheet from a third party during the Parties' exclusivity period (the "Exclusivity Period") that would constitute a Target Acquisition Proposal. During March 25 and 26 (the "New Proposal Period"), the period following the expiration of the Exclusivity Period under the Letter of Interest dated January 23, 2006 and prior to the Amendment Agreement entered into by the Parties on March 27, 2006 to extend the Exclusivity Period, the Target entered into a Confidentiality and Nondisclosure Agreement with the third party and conducted nonbinding negotiations with respect to the proposed terms of a Target Acquisition Proposal solely during the New Proposal Period. The Target did not permit the third party to conduct due diligence of the Target's operations or any other aspect of its businesses in connection with the Target Acquisition Proposal. Except for the Confidentiality and Nondisclosure Agreement with such sole third party, and from the Exclusivity Date to the Closing Date, the Target did not enter into any agreement, whether implied, written, or oral (nor did it create a basis for detrimental reliance) with any third party with respect to a Target Acquisition Proposal, and there is no basis, whether in indemnity, contract (including, without limitation, a contractual breach resulting in a "break-up fee" or compensatory damages), tort (including, without limitation, one based in tortious interference) or otherwise, exists for any third party to make any claim against the Sellers, Target or Buyer, arising out of any Target Acquisition Proposal. This disclosure is for informational purposes and is not an exception to the Target's representations and warranties for purposes of the indemnification provisions of the Agreement.

54

**Schedule 4(gg)**

**Certain Business Relationships with the Target**

The Primary Sellers have each loaned money to the Target pursuant to Promissory Notes as set forth on Schedule 5(b) of the Agreement.  In addition, the Target has purchased automobiles described in Schedule 4(i)(i) for the Primary Sellers and has entered into with each of the Primary Sellers the Acknowledgement Agreements described in Schedule 4(i)(i).    This disclosure is for informational purposes and is not an exception to the Target's representations and warranties for purposes of the indemnification provisions of the Agreement.

## Schedule 4(hh)

None.

**EXHIBIT A**

| Seller | No. of Target Shares | Portion of Closing Purchase Price | (Less) Portion of Indemnification Cash | (Less) Portion of Software Tool Payment | (Less) Aggregate Amount of Performance Bonuses | (Less) Employee Bonus Payout | Closing Payment |
|---|---|---|---|---|---|---|---|
| Eddy Dominguez | 5,000 | $2,058,264.72 | $379,987.33 | $142,495.25 | $63,331.22 | $39,146.61 | $1,433,304.31 |
| Newton Bui | 5,000 | $2,058,264.72 | $379,987.33 | $142,495.25 | $63,331.22 | $39,146.61 | $1,433,304.31 |
| Tan Nguyen | 5,000 | $2,058,264.72 | $379,987.33 | $142,495.25 | $63,331.22 | $39,146.61 | $1,433,304.31 |
| Licino Valino | 790 | $325,205.84 | $60,038.01 | $22,514.25 | $10,006.34 | $6,185.17 | $226,462.07 |
| **TOTAL** | 15,790 | $6,500,000 | $1,200,000 | $450,000 | $200,000 | $123,625 | $4,526,375 |

## EXHIBIT B

**(Attached:    Escrow Agreement)**

**EXHIBIT C**

**(Attached:    Form of Noncompetition Agreement)**

**EXHIBIT D**

**ARBITRATION PROCEDURES**

1.    <u>Notice of Claim</u>.    A party asserting a Claim (the "<u>Claimant</u>") shall deliver written notice to each party against whom the Claim is asserted (collectively, the "<u>Opposing Party</u>"), with a copy to the persons required to receive copies of notices under the Agreement (the "<u>Additional Notice Parties</u>"), specifying the nature of the Claim and requesting a meeting to resolve same.    The Additional Notice Parties shall be given reasonable notice of and invited and permitted to attend any such meeting.    If no resolution is reached within 10 business days after delivery of such notice, the Claimant or the Opposing Party may, within 45 days after giving such notice, invoke the arbitration procedure provided herein by delivering to each Opposing Party and the Additional Notice Parties a Notice of Arbitration, which shall specify the Claim as to which arbitration is sought, the nature of the Claim, the basis for the Claim, and the nature and amount of any damages or other compensation or relief sought (a "<u>Notice of Arbitration</u>").    Each party agrees that no punitive damages may be sought or recovered in any arbitration, judicial proceeding or otherwise.    Failure to file a Notice of Arbitration within 45 days shall constitute a waiver of any right to relief for the matters asserted in the notice of claim. Any Claim shall be forever barred, and no relief may be sought therefor, if written notice of such Claim is not made as provided above within one year of the date such claim accrues.

2.    <u>Selection of Arbitrator</u>.    Within 20 business days after receipt of the Notice of Arbitration, the Claimant and the Opposing Party shall meet and attempt to agree on an arbitrator to hear and decide the Claim.    If the Claimant and the Opposing Party cannot agree on an arbitrator within ten business days, then they shall request the American Arbitration Association (the "AAA") in San Francisco, California to appoint an arbitrator experienced in the area of dispute who does not have an ongoing business relationship with any of the parties to the dispute.    If the arbitrator selected informs the parties he cannot hear and resolve the Claim within the time-frame specified below, the Employee and the Board shall request the appointment of another arbitrator by the AAA subject to the same requirements.

3.    <u>Arbitration Procedure</u>.    The following procedures shall govern the conduct of any arbitration under this section.    All procedural matters relating to the conduct of the arbitration other than those specified below shall be discussed among counsel for the parties and the arbitrator.    Subject to any agreement of the parties, the arbitrator shall determine all procedural matters not specified herein.

(a)    Within 30 days after the delivery of a Notice of Arbitration, each party shall afford the other, or its counsel, with reasonable access to documents relating directly to the issues raised in the Notice of Arbitration.    All documents produced and all copies thereof shall be maintained as strictly confidential, shall be used for no purpose other than the arbitration hereunder, and shall be returned to the producing party upon completion of the arbitration. There shall be no other discovery except that, if a reasonable need is shown, limited depositions may be allowed in the discretion of the arbitrator, it being the expressed intention and agreement of each party to have the arbitration proceedings conducted and resolved as expeditiously,

D-1

economically and fairly as reasonably practicable, and with the maximum degree of confidentiality.

(b)    All written communications regarding the proceeding sent to the arbitrator shall be sent simultaneously to each party or its counsel, with a copy to the Additional Notice Parties. Oral communications between any of the parties or their counsel and the arbitrator shall be conducted only when all parties or their counsel are present and participating in the conversation.

(c)    Within 20 days after selection of the arbitrator, the Claimant shall submit to the arbitrator a copy of the Notice of Arbitration, along with a supporting memorandum and any exhibits or other documents supporting the Claim.

(d)    Within 20 days after receipt of the Claimant's submission, the Opposing Party shall submit to the arbitrator a memorandum supporting its position and any exhibits or other supporting documents. If the Opposing Party fails to respond to any of the issues raised by the Claimant within 20 days of receipt of the Claimant's submission, then the arbitrator may find for the Claimant on any such issue and bar any subsequent consideration of the matter.

(e)    Within 20 days after receipt of the Opposing Party's response, the Claimant may submit to the arbitrator a reply to the Opposing Party's response, or notification that no reply is forthcoming.

(f)    Within 10 days after the last submission as provided above, the arbitrator shall notify the parties and the Additional Notice Parties of the date of the hearing on the issues raised by the Claim. Scheduling of the hearing shall be within the sole discretion of the arbitrator, but in no event more than 30 days after the last submission by the parties, and shall take place within 50 miles of the Target at a place selected by the arbitrator or such other place as is mutually agreed. Both parties shall be granted substantially equal time to present evidence at the hearing. The hearing shall not exceed one business day, except for good cause shown.

(g)    Within 30 days after the conclusion of the hearing, the arbitrator shall issue a written decision to be delivered to both parties and the Additional Notice Parties (the "Final Determination"). The Final Determination shall address each issue disputed by the parties, state the arbitrator's findings and reasons therefor, and state the nature and amount of any damages, compensation or other relief awarded.

(h)    The award rendered by the arbitrator shall be final and non-appealable, except as otherwise provided under the American Arbitration Act, and judgment may be entered upon it in accordance with applicable law in such court as has jurisdiction thereof.

4.    Costs of Arbitration.    As part of the Final Determination, the arbitrator shall determine the allocation of the costs and expenses of the arbitration, including the arbitrator's fee and both parties' attorneys' fees and expenses, based upon the extent to which each party prevailed in the arbitration. In the event that any relief which is awarded is non-

monetary, then such costs and expenses shall be allocated in any manner as may be determined by the arbitrators.

5.    Satisfaction of Award.    If any party fails to pay the amount of the award, if any, assessed against it within 30 days after the delivery to such party of the Final Determination, the unpaid amount shall bear interest (on an annual basis) from the date of such delivery at the lesser of (i) prime lending rate announced by Citibank N.A. plus three hundred basis points and (ii) the maximum rate permitted by applicable usury laws.    In addition, such party shall promptly reimburse the other party for any and all costs or expenses of any nature or kind whatsoever (including attorneys' fees) reasonably incurred in seeking to collect such award or to enforce any Final Determination.

6.    Confidentiality of Proceedings.    The parties hereto agree that all of the arbitration proceedings provided for herein, including any notice of claim, the Notice of Arbitration, the submissions of the parties, and the Final Determination issued by the arbitrator, shall be confidential and shall not be disclosed at any time to any person other than the parties, their representatives, the arbitrator and the Additional Notice Parties; provided, however, that this provision shall not prevent the party prevailing in the arbitration from submitting the Final Determination to a court for the purpose of enforcing the award, subject to comparable confidentiality protections if the court agrees; and further provided that the foregoing shall not prohibit disclosure to the minimum extent reasonably necessary to comply with (i) applicable law (or requirement having the force of law), court order, judgment or decree, including, without limitation, disclosures which may be required pursuant to applicable securities laws, and (ii) the terms of contractual arrangements (such as financing arrangements) to which the Target or any Additional Notice Party may be subject so long as such contractual arrangements were not entered into for the primary purpose of permitting disclosure which would otherwise be prohibited hereunder.

**EXHIBIT A**

| Seller | No. of Target Shares | Portion of Closing Purchase Price | (Less) Portion of Indemnification Cash | (Less) Portion of Software Tool Payment | (Less) Aggregate Amount of Performance Bonuses | (Less) Employee Bonus Payout | Closing Payment |
|---|---|---|---|---|---|---|---|
| Eddy Dominguez | 5,000 | $2,058,264.72 | $379,987.33 | $142,495.25 | $63,331.22 | $39,146.61 | $1,433,304.31 |
| Newton Bui | 5,000 | $2,058,264.72 | $379,987.33 | $142,495.25 | $63,331.22 | $39,146.61 | $1,433,304.31 |
| Tan Nguyen | 5,000 | $2,058,264.72 | $379,987.33 | $142,495.25 | $63,331.22 | $39,146.61 | $1,433,304.31 |
| Licino Valino | 790 | $325,205.84 | $60,038.01 | $22,514.25 | $10,006.34 | $6,185.17 | $226,462.07 |
| **TOTAL** | 15,790 | $6,500,000 | $1,200,000 | $450,000 | $200,000 | $123,625 | $4,526,375 |

# EXHIBIT B

### (Attached:   Escrow Agreement)

# EXHIBIT C

### (Attached:    Form of Noncompetition Agreement)

## EXHIBIT D

## ARBITRATION PROCEDURES

     1.    <u>Notice of Claim</u>.  A party asserting a Claim (the "<u>Claimant</u>") shall deliver written notice to each party against whom the Claim is asserted (collectively, the "<u>Opposing Party</u>"), with a copy to the persons required to receive copies of notices under the Agreement (the "<u>Additional Notice Parties</u>"), specifying the nature of the Claim and requesting a meeting to resolve same.  The Additional Notice Parties shall be given reasonable notice of and invited and permitted to attend any such meeting.  If no resolution is reached within 10 business days after delivery of such notice, the Claimant or the Opposing Party may, within 45 days after giving such notice, invoke the arbitration procedure provided herein by delivering to each Opposing Party and the Additional Notice Parties a Notice of Arbitration, which shall specify the Claim as to which arbitration is sought, the nature of the Claim, the basis for the Claim, and the nature and amount of any damages or other compensation or relief sought (a "<u>Notice of Arbitration</u>").  Each party agrees that no punitive damages may be sought or recovered in any arbitration, judicial proceeding or otherwise.  Failure to file a Notice of Arbitration within 45 days shall constitute a waiver of any right to relief for the matters asserted in the notice of claim. Any Claim shall be forever barred, and no relief may be sought therefor, if written notice of such Claim is not made as provided above within one year of the date such claim accrues.

     2.    <u>Selection of Arbitrator</u>.  Within 20 business days after receipt of the Notice of Arbitration, the Claimant and the Opposing Party shall meet and attempt to agree on an arbitrator to hear and decide the Claim.  If the Claimant and the Opposing Party cannot agree on an arbitrator within ten business days, then they shall request the American Arbitration Association (the "AAA") in San Francisco, California to appoint an arbitrator experienced in the area of dispute who does not have an ongoing business relationship with any of the parties to the dispute.  If the arbitrator selected informs the parties he cannot hear and resolve the Claim within the time-frame specified below, the Employee and the Board shall request the appointment of another arbitrator by the AAA subject to the same requirements.

     3.    <u>Arbitration Procedure</u>.  The following procedures shall govern the conduct of any arbitration under this section.  All procedural matters relating to the conduct of the arbitration other than those specified below shall be discussed among counsel for the parties and the arbitrator.  Subject to any agreement of the parties, the arbitrator shall determine all procedural matters not specified herein.

     (a)    Within 30 days after the delivery of a Notice of Arbitration, each party shall afford the other, or its counsel, with reasonable access to documents relating directly to the issues raised in the Notice of Arbitration.  All documents produced and all copies thereof shall be maintained as strictly confidential, shall be used for no purpose other than the arbitration hereunder, and shall be returned to the producing party upon completion of the arbitration. There shall be no other discovery except that, if a reasonable need is shown, limited depositions may be allowed in the discretion of the arbitrator, it being the expressed intention and agreement of each party to have the arbitration proceedings conducted and resolved as expeditiously,

D-1

economically and fairly as reasonably practicable, and with the maximum degree of confidentiality.

(b)     All written communications regarding the proceeding sent to the arbitrator shall be sent simultaneously to each party or its counsel, with a copy to the Additional Notice Parties.  Oral communications between any of the parties or their counsel and the arbitrator shall be conducted only when all parties or their counsel are present and participating in the conversation.

(c)     Within 20 days after selection of the arbitrator, the Claimant shall submit to the arbitrator a copy of the Notice of Arbitration, along with a supporting memorandum and any exhibits or other documents supporting the Claim.

(d)     Within 20 days after receipt of the Claimant's submission, the Opposing Party shall submit to the arbitrator a memorandum supporting its position and any exhibits or other supporting documents.   If the Opposing Party fails to respond to any of the issues raised by the Claimant within 20 days of receipt of the Claimant's submission, then the arbitrator may find for the Claimant on any such issue and bar any subsequent consideration of the matter.

(e)     Within 20 days after receipt of the Opposing Party's response, the Claimant may submit to the arbitrator a reply to the Opposing Party's response, or notification that no reply is forthcoming.

(f)     Within 10 days after the last submission as provided above, the arbitrator shall notify the parties and the Additional Notice Parties of the date of the hearing on the issues raised by the Claim.  Scheduling of the hearing shall be within the sole discretion of the arbitrator, but in no event more than 30 days after the last submission by the parties, and shall take place within 50 miles of the Target at a place selected by the arbitrator or such other place as is mutually agreed.   Both parties shall be granted substantially equal time to present evidence at the hearing.   The hearing shall not exceed one business day, except for good cause shown.

(g)     Within 30 days after the conclusion of the hearing, the arbitrator shall issue a written decision to be delivered to both parties and the Additional Notice Parties (the "Final Determination").   The Final Determination shall address each issue disputed by the parties, state the arbitrator's findings and reasons therefor, and state the nature and amount of any damages, compensation or other relief awarded.

(h)     The award rendered by the arbitrator shall be final and non-appealable, except as otherwise provided under the American Arbitration Act, and judgment may be entered upon it in accordance with applicable law in such court as has jurisdiction thereof.

4.     Costs of Arbitration.  As part of the Final Determination, the arbitrator shall determine the allocation of the costs and expenses of the arbitration, including the arbitrator's fee and both parties' attorneys' fees and expenses, based upon the extent to which each party prevailed in the arbitration.   In the event that any relief which is awarded is non-

monetary, then such costs and expenses shall be allocated in any manner as may be determined by the arbitrators.

       5.    <u>Satisfaction of Award</u>.   If any party fails to pay the amount of the award, if any, assessed against it within 30 days after the delivery to such party of the Final Determination, the unpaid amount shall bear interest (on an annual basis) from the date of such delivery at the lesser of (i) prime lending rate announced by Citibank N.A. plus three hundred basis points and (ii) the maximum rate permitted by applicable usury laws.  In addition, such party shall promptly reimburse the other party for any and all costs or expenses of any nature or kind whatsoever (including attorneys' fees) reasonably incurred in seeking to collect such award or to enforce any Final Determination.

       6.    <u>Confidentiality of Proceedings</u>.   The parties hereto agree that all of the arbitration proceedings provided for herein, including any notice of claim, the Notice of Arbitration, the submissions of the parties, and the Final Determination issued by the arbitrator, shall be confidential and shall not be disclosed at any time to any person other than the parties, their representatives, the arbitrator and the Additional Notice Parties; provided, however, that this provision shall not prevent the party prevailing in the arbitration from submitting the Final Determination to a court for the purpose of enforcing the award, subject to comparable confidentiality protections if the court agrees; and further provided that the foregoing shall not prohibit disclosure to the minimum extent reasonably necessary to comply with (i) applicable law (or requirement having the force of law), court order, judgment or decree, including, without limitation, disclosures which may be required pursuant to applicable securities laws, and (ii) the terms of contractual arrangements (such as financing arrangements) to which the Target or any Additional Notice Party may be subject so long as such contractual arrangements were not entered into for the primary purpose of permitting disclosure which would otherwise be prohibited hereunder.

27235606\V-1