Daniel J. Herling (SBN 103711)
Keller and Heckman LLP
50 California Street, Suite 1500
San Francisco, CA 94111
415.277.5952
415.277.5954

Attorneys for Plaintiffs
EDDY DOMINGUEZ, NEWTON BUI,
TAN NGUYEN and LICINO VALINO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDDY DOMINGUEZ, NEWTON BUI, TAN NGUYEN and CLICINO VALINO, <br><br> Plaintiffs, <br><br> vs. <br><br> ANDREW CORPORATION, <br><br> Defendant. | Case No. C 07-04679 CW <br><br> **PLAINTIFFS' OPPOSITION TO ANDREW CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT IN FAVOR OF ARBITRATION** <br><br> Date: November 29, 2007 <br> Time: 2:00 p.m. <br> Dept: 2, 4th Fl. <br><br> Hon. Claudia Wilken |

## I.    INTRODUCTION

Defendant Andrew Corporation's Motion should be dismissed in its entirety.

Certain of the claims (First, Sixth, and Seventh Causes of Action)[1] brought by plaintiffs are specifically exempted from arbitration under Section 10(n) of the Stock Purchase Agreement ("SPA").

The remainder of the claims relate to (1) misrepresentations (Second and Third Causes of Action of FAC) relating to a separate Operational Plan of Record ("Operating Agreement") and (2) conduct of defendant Andrew Corporation through its agents not related to the terms and conditions of the SPA

---

[1] The original Complaint was filed on September 11, 2007. Subsequent to that filing, events occurred that superseded, added to, or mooted plaintiffs' allegations against defendant Andrew Corporation. Andrew Corporation refused to stipulate to leave to file an amended complaint that clarifies the allegations being brought by the plaintiffs before this Court. See Motion for Leave to File Amended Complaint, filed on November 6, 2007.

(Fourth, Fifth, Eighth, and Ninth Causes of Action of the FAC).

In an attempt not to confuse the Court, plaintiffs will cite to the First Amended Complaint as "FAC" and/or the original Complaint ("OC") in the event that there are differences in the allegations and/or causes of action.

## II.    ALLEGATIONS OF PLAINTIFFS

Defendant Andrew Corporation misses the point (either intentionally or not) of the claims of the plaintiffs in this action.  As is alleged in both the OC and FAC, separate and distinct from the SPA, the parties negotiated an Operating Agreement.  Andrew insisted that any operating agreement not be developed until after closing." (See ¶ 16 of OC and FAC)  Andrew and plaintiffs drafted the Operating Agreement for the purpose of outlining operational support (head count and capital investment) levels adequate to allow plaintiffs to meet or exceed the earn-out threshold criteria necessary to collect a substantial portion of the total sales price.  (See ¶¶ 26 and 28 of OC and FAC, respectively).

The claim for breach of the SPA, at Section 2(g) (First Cause of Action) and the remedies requested of enforcing the SPA (First, Sixth and Seventh of FAC) are based on Andrew failing to provide plaintiffs with the necessary head count and other resources to accomplish the goals necessary for plaintiffs to have an opportunity to be eligible for the earn-out is specifically carved out of arbitration by Section 10(n) of the SPA, which provides:

> Specific Performance.  Each of the Parties acknowledges and agrees that the other Parties will be damaged irreparably in the event that any of the provisions of this Agreement are not performed in accordance with their specific terms or are otherwise breached.  Accordingly, except as provided in Section 10(o) below, each of the Parties agrees that the other Parties shall be entitled to an injunction or injunctions to prevent breaches of the provisions of this Agreement and to enforce specifically this Agreement and the terms and provisions hereof in any court of the United States or any state thereof having jurisdiction over the Parties and the matter, in addition to any other remedy to which they may be entitled, at law or in equity.

The remaining claims of the plaintiffs are in two distinct categories:

(a) misrepresentation claims (both fraudulent and negligent misrepresentation) relate to Andrews falsely making representations that induced plaintiffs to enter into the Operating Agreement that would enable plaintiffs to have the opportunity to meet certain earn-outs.

(b) conduct claims (interference and infliction of emotional distress claims).  These are

1  claims not related to the SPA, but rather related to the failure of Andrew to meet its obligations

2  under the Operating Agreement and claims unrelated to the SPA based upon threats of Andrew

3  through its agent of physical harm to plaintiff Dominguez in an apparent attempt to dissuade

4  plaintiffs from prosecuting the instant lawsuit.

5  **III.    DEFENDANT'S ATTEMPT TO CHARACTERIZE ALL THE CLAIMS BEING**
   **BROUGHT BY PLAINTIFFS ARISING OUT OF OR RELATED TO THE SPA**
6  **IGNORES THE ALLEGATIONS ACTUALLY BEING MADE**

7         **A.    The Arbitration Carve-Out Claims Seek Injunctive Relief.**

8         The First, Sixth, and Seventh Causes of Action of the FAC specifically ask the Court for

9  injunctive relief.  As is set forth in detail in plaintiffs' Motion for Preliminary Injunction, plaintiffs are

10 requesting the Court to enjoin Andrew from taking any further action that would interfere with the

11 agreed-upon Operational Plan of Record (Operating Agreement), including, but not limited to, the

12 termination or reassignment of the plaintiffs from their current employment positions with the ACMC

13 Division of Andrew.

14        As is set forth above, Section 10(n) of the SPA accounts for and permits the parties to petition the

15 Court for the type of relief outside the arbitration process that is being requested in Causes of Action

16 One, Six, and Seven of the FAC.

17        **B.    Andrew Corporation's Attempts To Rewrite Allegations Of Plaintiffs In Order To**
          **Fit Them Under The Arbitration Clause Of The SPA Should Be Rejected.**
18

19        Andrew Corporation argues that it is "unaware" of any Operating Agreement.  (See Andrew's

20 Motion at 5:2-3) and/or that the "integration" clause voids any such agreement.  (Andrew's Motion at

21 5:5-8).  Therefore, the claims involving the Operating Agreement must relate to the SPA and must be

22 arbitrated.

23        This Argument is unavailing on several counts.

24        First, in a motion to dismiss under F.R.C.P. Section 12(b)6, the allegations in a complaint are

25 accepted as true   *Spreewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)  ("A dismissal

26 for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is reviewed *de novo*.  Review is limited to

27 the contents of the complaint.  All allegations of material fact are taken as true and construed in the light

28 most favorable to the nonmoving party.") (internal citations omitted).  Both the OC and the FAC assert

**PLAINTIFFS' OPPOSITION TO ANDREW CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT IN**
**FAVOR OF ARBITRATION**

that the Operating Agreement was a separate agreement from the SPA that was never implemented.  In

fact, it is alleged that Andrew demanded that it be separate.  OC at 16 and 18, FAC at 22.  The allegation

that the Operating Agreement was never implemented is the thrust of the fraud and misrepresentation

claims against Andrew.

Second, the claims brought by the plaintiffs (other than the arbitration carve-out claims) do not

relate to a breach of the SPA and/or Operating Agreement, but rather relate to misrepresentations,

interference, and infliction of emotional distress on the part of Andrew.

Third, irrespective of the broad language of the arbitration term (SPA § 10(o), the dispute

between the parties must fall within the scope of the agreement to arbitrate.  *Mediterranean Enterprises,

Inc. v. SSangyoung Construction Company, Ltd.*, 708 F2d 1458, 1463 (9th Cir. 1983) (Ultimately, the

issue of arbitrability is to be determined by the contract entered into by the parties.)

Andrew's arguments are an attempt to get the arbitration provision to apply irrespective of the

contract at issue and the actual claims being made.  On one hand, Andrew argues that there is no

Operating Agreement, or that it is void, and then claims that the Operating Agreement "touches matters"

covered by the SPA containing the arbitration clause.  What Andrew fails to acknowledge is that the

Operating Agreement is a separate agreement from the SPA and that the claims of the plaintiffs relate to

fraud, interference, and infliction of emotional distress that do not arise out of the SPA.  Rather, the

claims arise out of the failure of Andrew to undertake certain promised conduct (fraud/misrepresentation

claims) and the tortuous conduct of Andrew (interference and infliction of emotional distress claims).  In

either case, the SPA's arbitration clause does not "touch" or reach this conduct.  Andrew's argument

logical extension would be that any claim of these plaintiffs would be subject to arbitration because the

SPA resulted in the plaintiffs having some type of relationship with Andrew whether it be employment,

parties to a contract, or victims of threats of physical harm.

Neither the language of the Arbitration Agreement, Section 10(o) of the SPA nor case law

supports such a broad interpretation.  The arbitration scope is as follows:

> . . . Each Party hereto agrees that the arbitration procedure set forth in
> Exhibit D hereto shall be the sole and exclusive method for resolving any
> claim or dispute ("Claim") arising out of or relating to the rights and
> obligations acknowledged and agreed to in this Agreement, whether such
> Claim arose or the facts on which such Claim is based occurred prior to or
> after the execution and delivery of this Agreement. (Emphasis added)

1    In *Mediterranean Enterprises, Inc., supra,* the Court interpreted an arbitration clause in an

2    agreement that provided as follows:

3        Any disputes arising hereunder or following the formation of joint venture
         shall be settled through binding arbitration pursuant to the Korean-U.S.

4        Arbitration Agreement with arbitration to take place in Seoul, Korea.

5    Subsequently, Mediterranean Enterprises, Inc. ("MEI") and Ssangyoung entered into an agency

6    agreement with Trac Enterprises.  A dispute arose, and MEI alleged counts that the Court evaluated and

7    determined were not subject to arbitration.  Specifically, one count alleged that Ssangyoung induced and

8    conspired to induce breach of the Trac agency agreement, a separate and distinct contract.  The Court

9    held that this count alleged activity and raises issues that were predominantly unrelated to the central

10   conflict over the interpretation and performance of the Agreement.  MEI, *id.* at 1464.

11   Here, plaintiffs allege that the fraud and misrepresentation claims related to the failure of Andrew

12   to undertake certain promised conduct in the Operating Agreement, separate and distinct from the SPA.

13   As in *Mediterranean Enterprises*, the defendant's alleged conduct could have been accomplished even if

14   the SPA did not exist.

15   The *Mediterranean Enterprises* court also found that counts relating to a claim in *quantum meruit*

16   and conversion of certain documents were not related to the agreement that controlled the arbitration

17   clause.  Here, the tortuous conduct of Andrew, the interference with the plaintiffs in their relationship

18   with third parties, and the infliction of emotional distress claims would stand alone irrespective of the

19   SPA.  MEI, *id.* at 1465-1466.

20   The Court in *Telecom Italia, SPA v. Wholesale Telecom Corporation*, 248 F.3d 1109 (11th Cir.

21   2001) addressed an arbitration clause in an equipment lease between a reseller of telecommunications

22   services and the telecommunications company's subsidiary, applicable to "any dispute arising out of or

23   relating to" the lease at issue.

24   The Court analyzed at length claims that an arbitration clause in a contract covered a dispute

25   concerning another contract claim or a tort claim, each of which was claimed to be related to the contract

26   requiring arbitration.  The Court also reviewed other circuits that have addressed a situation similar to the

27   claims being brought by the plaintiffs in this case.  Specifically, the Court in *Telecom Italia* focused on

28   whether the tort or breach in question was an immediate, foreseeable result of the performance of

1    contractual duties. *Id.* at 1116. The Court concurred that the tortious interference claim was not related

2    to the contract that contained the arbitration clause. *Id.*

3         Applying that analysis to the claims being made in the current case, the tort claims of fraud,

4    misrepresentation and interference relate to Andrew's conduct as to the Operating Agreement, not the

5    SPA.

6         The claims of infliction of emotional distress do not arise out of or relate to the rights and

7    obligations acknowledged and agreed to in the SPA.

8         Although Federal policy requires courts to resolve any doubt about the application of an

9    arbitration clause in favor of arbitration, *United Steel Workers of America v. Warrior and Gulf*

10   *Navigation, Co.*, 363 U.S. 574, 583, 80 S. Ct. 1347, 1353, 4 L.Ed.2d 1409, 1418 (1960), the Federal

11   policy cannot serve to stretch a contract beyond the scope originally intended by the parties. *Atkinson v.*

12   *Sinclair Refining Co.*, 370 U.S. 238, 242, 82 S.Ct. 1318, 1321, 8 L.Ed.2d 462, 466 (1962).

13        Here, Andrew demanded that the Operating Agreement not be part of the SPA. It would be

14   fundamentally unfair to now permit Andrew to arbitrate claims relating to the separate Operating

15   Agreement based upon the arbitration clause of the SPA.

16   **IV.    CONCLUSION**

17        The claims brought by the plaintiffs are not subject to arbitration under the terms and conditions

18   of the controlling agreement, the SPA.

19        The Fifth, Sixth, and Seventh Causes of Action brought by plaintiffs are specifically exempted

20   from arbitration under Section 10(n) of the SPA.

21        The scope of the arbitration clause is not open-ended. Claims must relate to rights and

22   obligations acknowledged and agreed to in the SPA. The claims for fraud, misrepresentation, and

23   interference with third parties relate to Andrews' failure to meet its promises under a separate and

24   distinct document, the Operating Agreement. The claims for intentional infliction of emotional distress

25   brought by plaintiff Dominguez are not related to the terms and conditions of the SPA.

26

27

28

1        Accordingly, the claims of the plaintiff as embodied in the OC and FAC are not subject to

2    arbitration and should be adjudicated by this Court.

3    Dated:  November 8, 2007                          Keller and Heckman LLP

4

5                                                By: /s/

6                                                   Daniel J. Herling

7                                              Attorneys for Plaintiffs

8                                              EDDY DOMINGUEZ, NEWTON BUI, TAN NGUYEN and LICINO VALINO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28