IVOR SAMSON (SBN 052767)
isamson@sonnenschein.com
MARY KAY LACEY (SBN 142812)
mlacey@sonnenschein.com
HILLARY NOLL KALAY (SBN 233173)
hkalay@sonnenschein.com
SONNENSCHEIN NATH & ROSENTHAL LLP
525 Market Street, 26th Floor
San Francisco, CA 94105-2708
Telephone: (415) 882-5000
Facsimile: (415) 882-0300

Attorneys for Defendant
ANDREW CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EDDY DOMINGUEZ, NEWTON BUI, TAN NGUYEN, and LICINO VALINO,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREW CORPORATION,<br><br>Defendant. | Case No. C 07-04679 CW<br><br>**ANDREW CORP.'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date: November 29, 2007<br>Time: 2:00 p.m.<br>Courtroom: 2, Fourth Floor<br>Honorable Claudia Wilken |

## I. INTRODUCTION

Plaintiffs are former shareholders of a company called Cell Site Industries, and current "at will" employees of Andrew Corporation. On April 24, 2006, Plaintiffs and Andrew entered into a Stock Purchase Agreement (the "Agreement" or "SPA"), whereby Andrew purchased Cell Site for $6 million "subject to an upward adjustment" to Plaintiffs "based on the achievement of certain financial performance objectives" for a period of three years following execution of the Agreement. (*See* Declaration of Mary Kay Lacey, filed in support of Andrew's Motion to Dismiss in Favor of Arbitration ("Lacey Decl."), Exhibit A, at ¶2(g).) According to Plaintiffs, they "achieved the first year earn-out targets." (*See* Complaint, ¶ 26.)

However, because Plaintiffs fear they may not meet the second and third year "earn-outs," they have brought a Motion for Preliminary Injunction asking this Court to issue an order enjoining Andrew from "terminating the plaintiffs' employment or making management decisions that would preclude [them] from having an opportunity to meet the earn-out criteria" set forth under the Stock Purchase Agreement. (*See* Declaration of Eddy Dominquez ("Dominquez Decl."), filed in Support of Plaintiffs' Motion for Preliminary Injunction). Not only is the relief requested so vague and overly broad as to be unenforceable, the provisions of the Agreement expressly reserve all such management and business decisions to the "full control and discretion" of Andrew. (*See* Lacey Decl., Exh, A, at ¶2(g)(iv).) Why Plaintiffs would seek an injunction to enforce the "earn-out" provisions of the Stock Purchase Agreement when the SPA gives Andrew control over decisions impacting the resources provided to Cell Site is nowhere explained by Plaintiffs. Instead, Plaintiffs spin their request differently.

Ignoring the actual language of the SPA, Plaintiffs claim there is another document, which they call the "Operating Agreement" (or "operational plan of record") that purportedly obligates Andrew to provide certain "headcount" and "capital" to Cell Site (or "ACMC" as the Cell Site unit is now called). (*See* Motion for Preliminary Injunction ("Motion"), p. 2.) Notably, Plaintiffs have not submitted any such "Operating Agreement" to the Court, and Andrew is unaware of any signed, written agreement that amends the express terms of the Stock Purchase Agreement. (*See* Declaration of Douglass Hall filed in Support of Andrew's

-1-

**ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION**

Opposition to Plaintiffs' Motion for Preliminary Injunction ("Hall Decl."), ¶ 3, filed herewith.)

In short, because Andrew has sole discretion to provide the "headcount" and "resources" it deems appropriate to Cell Site (i.e, ACMC), Plaintiffs cannot possibly make the showing necessary to justify the injunctive relief they seek. Thus, Plaintiffs' Motion for Preliminary Injunction, like their earlier Application for a Temporary Restraining Order, is properly denied.

## II.   STATEMENT OF FACTS

On April 24, 2006, Plaintiffs and Andrew entered into the Stock Purchase Agreement whereby Andrew purchased all of the outstanding capital stock of Cell Site. (Lacey Decl., Exh. A, Preamble, p. 1.) Under the Agreement, Plaintiffs became "at will" employees of Andrew and each of the Plaintiffs began working in a unit, now called ACMC, which is comprised of former Cell Site employees. (Id., Exh. A, at Schedule 4(w); ¶7 (iv), Complaint, ¶ 13)).

### 1.   The Earn-Out Provisions Of The Stock Purchase Agreement

Plaintiffs' Motion for Preliminary Injunction rests on the on the "earn-out" criteria set forth in the SPA.  For example, the Agreement provides that in order for Cell Site (now ACMC) to achieve an earn-out in year one (which ended on April 24, 2007), its revenues had to reach a minimum of $8.7 million, and its operating income had to reach a minimum of $3.9 million. (Lacey Decl., Exh. A, ¶ 2(g)(i)(A).)  Plaintiffs acknowledge they were paid $5 million as an earn-out following the year one earn-out period. (*See* Complaint, ¶ 26.)  However, Plaintiffs claim Andrew has not honored its obligation to provide the "necessary headcount and other resources to accomplish the goals necessary for Plaintiffs to be paid the [future] earn-out" described under the Agreement (Complaint, ¶31), and bring this Motion on that basis.

Yet, the terms of the Agreement make clear that Andrew has no obligation to supply any particular "headcount" or any other "resources" to Cell Site (ACMC).  Indeed, immediately after describing the milestones necessary to achieve the earn-outs contemplated by the parties, the Agreement clarifies that:

> Buyer [Andrew] shall have full control and discretion with respect to the decisions related to the Target Business [Cell Site], including, without limitation, its operations, budgeting, marketing, and business scope (collectively the "Buyer Decisions") and no Buyer Decision nor its effect on the Target Business shall result in any amendment or expectation of amendment by the parties with respect to any of the terms under this Section 2(g)(iv), and such

-2-
**ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION**

acknowledgment and agreement represents a material inducement to the Buyer [Andrew] entering into this Agreement. (Lacey Decl., Ex. A, at 2(g)(iv).)

In other words, not only does the Agreement make clear that Andrew reserved sole discretion to determine the business resources that would be provided to Cell Site (ACMC), it further provides that (1) the ability to exercise that discretion was "a material inducement" for Andrew in entering into the Agreement, and (2) there would be no "amendment or expectation of amendment" to the SPA regardless of the business decisions made by Andrew.

### 2. There Is No Signed "Operating Agreement" That Amends The SPA

Notwithstanding the dispositive language of the SPA, Plaintiffs allege that the parties agreed during negotiations that they would enter into a subsequent agreement, which Plaintiffs call an "Operating Agreement." According to Plaintiffs, the Operating Agreement was to set forth details about the investment Andrew would make in Cell Site "in the form of headcount and capital equipment to assist [Cell Site] in reaching the milestones needed to receive the earn outs contemplated under the Agreement." (*See* Complaint, ¶ 18.) Notably, Andrew is unaware of any subsequent signed written agreement amending the terms of the SPA (*see* Hall Decl., ¶3); and certainly no such agreement has been provided to the Court in support of Plaintiffs' Motion. The omission is critical because the SPA contains an "integration" clause, requiring that any subsequent agreement purporting to amend the Agreement, shall be valid only if it "is in writing and signed by the Buyer and the Sellers." (Lacey Decl., Exh. A, ¶10(i).)

### 3. The Arbitration And Injunctive Relief Provisions Of The Agreement.

The SPA also provides that arbitration will be the "sole and exclusive method for resolving any claim or dispute … arising out of or relating to the rights and obligations agreed to in [the SPA], "whether such [c]laim arose or the facts on which such [c]laim is based occurred prior to or after the execution and delivery of [the Agreement.] (Lacey Decl., Exh. A, ¶ 10(o).) The only exception to mandatory arbitration is where either party seeks to enforce provisions of the Agreement through injunctive relief. Section 10(n) provides that each of the parties:

> acknowledge and agree [that the other party] "would be damaged irreparably in the event any of the provisions of this Agreement are not performed in accordance with their specific terms or otherwise are breached. Accordingly, except as provided in Section 10(o) below, each of the Parties agrees that the other Parties shall be entitled to an injunction or

specifically enforce this Agreement and the terms and provisions hereof in any court of the United States or any state thereof having jurisdiction over the Parties and the matter …"

As a result, by its terms, the "carve out" provided in Section 10(n) narrowly applies only to claims seeking to enforce actual "terms and provisions" of the Agreement.

### III.  ARGUMENT

A preliminary injunction may only be granted where the moving party can show either: (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) serious questions are raised and the balance of hardships tip in the movant's favor. *Woodrow F. Morgan, Inc. v. U.S.*, 670 F. Supp. 289, 290 (E.D. Cal. 1987). These formulations are not different tests, but represent two points on a sliding scale where the required degree of irreparable harm increases as the probability of success decreases, and vice versa. *Reinharz v. Mediagate, Ltd.*, 2005 WL 1514136, *2 (N.D. Cal. June 14, 2005) (Wilken, J.) (quoting *U.S. v. Odessa Union Warehouse Co-op*, 833 F. 2d 172, 174, 175 (9th Cir. 1987). But, regardless of the probability of success, some irreparable harm must be threatened, or the injunctive relief will be denied. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F. 3d 738, 747 (D.C. Cir. 1995).

In seeking the extraordinary relief of a preliminary injunction, Plaintiffs assert they will suffer immediate and irreparable harm if the Court does not issue an injunction to prevent Andrew from (1) continuing to deprive Plaintiffs of the "headcount" and "operating resources" necessary to allow Plaintiffs to reach their future (April 2008 and 2009) earn-out objectives, and (2) terminating or reassigning Plaintiffs from their current positions with Andrew. (*See* Motion, at pp. 3-4.) However, as discussed below, Plaintiffs are not entitled to injunctive relief because they cannot establish a likelihood of success on the merits or the possibility of irreparable injury. In addition, they have not even asserted that "serious questions are raised" by their Motion.

### A.  Plaintiffs Have Not Shown They Are Likely To Succeed On The Merits.

#### 1.  Plaintiffs Fail To State A Claim Entitling Them To Relief

Plaintiffs' request for injunctive relief is premised on the "carve out" provision set forth in Section 10(n) of the Agreement. However, as set forth above, this "carve out" from mandatory arbitration is narrowly limited to enforcing the "terms and provisions" of the

-4-

**ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION**

Agreement. Here, **Plaintiffs point to no terms within the SPA that they seek to enforce.** Indeed, they cannot possibly seek to enforce the terms of the "earn-out" provisions set forth in Section 2(g) of the Agreement, because that Section states that Andrew has "full control and discretion" with respect to providing resources to Cell Site. (Lacey Decl., ¶ 2(g)(iv).)

Instead, the "terms" Plaintiffs seek to enforce (which relate to Andrew's purported failure to provide Cell Site with "headcount" and "capital resources" to assist Plaintiffs in meeting their earn-out objectives (Complaint at ¶¶ 47, 49, 52, 54)), are supposedly found in a wholly separate document (the Operating Agreement) that Plaintiffs have not even put before the Court. Moreover, even if Plaintiffs did attempt to belatedly introduce the "Operating Agreement," it would not assist them in meeting their burden of establishing a likelihood of success on the merits unless they produced a signed document evidencing the parties intention to amend the Stock Purchase Agreement. This is so because the Agreement contains an "integration" clause which mandates that any subsequent agreement purporting to amend the Agreement is only valid if it is in writing and signed by both the Buyer (Andrew) and the Seller (Cell Site). (Lacey Decl., Exh. A, ¶ 10(i).) Not only is Andrew confident no such document exists, it is equally certain that it never *guaranteed* any headcount or operating capital to Plaintiffs. (*See* Hall Decl., ¶3.) Instead, the resources projected for ACMC were always subject to change based on numerous business considerations made by Andrew. (Id.)

Accordingly, because there are no terms in the SPA that Plaintiffs seek to enforce through injunctive relief under Section 10(n) of the Agreement, they *cannot* state a claim for relief, and their motion for injunctive relief is properly denied. Indeed, it is axiomatic that a party with no chance of success on the merits cannot obtain a preliminary injunction. *See, e.g., AM General Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 804 (7th Cir. 2002) (preliminary injunction denied where movant had no chance of proving its "mark" was "infringed" because it could not demonstrate the ownership necessary to support its claim).

### 2. Plaintiffs Fail To Cite Any Law To Support Their Claims.

Even assuming Plaintiffs could state a claim for relief, they would still be required to demonstrate a "fair chance of success on the merits." *Woodrow*, 670 F. Supp. at 293. The

-5-

**ANDREW CORP.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION**

plaintiff's burden of showing a likelihood of success on the merits includes the burden of showing a likelihood that it would prevail on its claim as well as against any affirmative defenses raised by defendant. *Dr. Seuss Enter., L.P. v. Penguin Books, USA, Inc.*, 924 F. Supp. 1559, 1562 (S.D. Cal. 1996); *see also Religious Tech. Ctr. v. Netcom On-Line Communication Servs.*, 923 F. Supp. 1231, 1242 n.12 (N.D. Cal. 1995). Plaintiffs cannot make this showing.

In determining whether a movant has established a likelihood of success on the merits, courts analyze the standards governing the claims asserted. *See, e.g., Int'l Jenson, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822-25 (9th Cir. 1993) (in determining probability of success on the merits of trademark infringement, court analyzed law regarding whether alleged trademark was nonfunctional, distinctive and likely to be confused with defendant's products, the factors used in determining whether a trademark has been infringed); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1325 (N.D. Cal. 1995) (in determining probability of success on the merits of promissory estoppel, Court analyzed whether movant could prove an unambiguous promise was made, as a factor necessary to the claim).

Here, Plaintiffs simply recite what they describe as the "key" facts of their Complaint, but make no attempt to apply the law to those facts to demonstrate a likelihood of success on the merits. Specifically, Plaintiffs point to no authority, or additional evidence, to support their apparent conclusion that Andrew is somehow legally or contractually obligated to meet the objectives set forth in an unsigned "Operating Agreement" -- notwithstanding the fact that such an "obligation" directly contradicts the actual language of the signed SPA. Nor do they cite any evidence to support an argument that the integration clause of the Agreement is unenforceable.[1]

---

[1] To support their contention that Andrew "knew" the earn-out was a critical element of the Agreement, and that Andrew advised Plaintiffs that the criteria for achieving the earn-out was dependent on a future Operating Agreement, Plaintiffs submit the self-serving declaration of Eddy Dominquez. This evidence is inadmissible for the reasons set forth in Andrew's Objection to the Dominquez Declaration, filed herewith. In addition, the purported "motive" ascribed to Andrew for failing to met the "obligations" of the Operating Agreement is likewise inadmissible. (Id., *see also* Andrew's Objection to the Declaration of Edward Davis.) Moreover, even if the evidence were admissible, it does not explain the legal basis for Plaintiffs' assertion that the Operating Agreement is enforceable, while the SPA is not; or explain how the parole evidence relied upon by Plaintiffs is admissible to contradict the terms of the SPA.

In sum, without any analysis of whether Plaintiffs' "facts" support the legal standards for their claims, there is no basis to find that Plaintiffs have met their burden of establishing a likelihood of success on the merits of their case. *See Dr. Seuss Enter.*, 924 F. Supp. at 1562; *Religious Tech. Ctr.*, 923 F. Supp. at 1242 n.12.

### 3. The Termination Of An Employment Relationship May Not Be Enjoined Under California Law.

Not only do Plaintiffs seek to enforce the terms of an undisclosed, unenforceable "Operating Agreement" (under the guise of seeking to enforce the terms of the Stock Purchase Agreement), they also seek an order preventing Andrew from terminating Plaintiffs employment -- despite their "at will" status. California law prohibits such a result.[2]

Civil Code section 3390 prohibits specific enforcement of "[a]n obligation to employ another in personal service..." Cal. Civ. Code § 3390. Section 3390 also prohibits enjoining either principal or agent from breaching an agency contract. With this statute, the California Legislature recognized the obvious: forcing parties to work with each other after their relationship has failed is not sound policy. *Woolley v. Embassy Suites, Inc.*, 227 Cal. App. 3d 1520, 1533-1534 (1991) (trial court abused its discretion in enjoining termination of agency agreement). The rule against specific performance applies not only to nearly all contracts of continuous employment between a master and servant, but also to contracts for the rendition of a performance that is of a distinctly personal and non-delegable character. *Id.* at 1534 (internal quotations omitted). *See also Thayer Plymouth Ctr. v. Chrysler Motors Corp.*, 255 Cal. App. 2d 300, 303-04 (1967) ("A contract which requires a continuing series of acts and demands cooperation between the parties for the successful performance of those acts is not subject to specific performance... An injunction cannot be granted to prevent the breach of a contract, the performance of which would not be specifically enforced.")[3]

---

[2] Because this action was brought in federal district court under diversity jurisdiction, the substantive law of California, the forum state, applies. *St. Paul Fire and Marine Ins. Co. v. Weiner*, 606 F. 2d 864, 867 (9th Cir. 1979).

[3] It would also be against sound public policy to issue a blanket injunction requiring Andrew to

Thus, as a matter of California law, Plaintiffs' request for an injunction to prevent Andrew from terminating Plaintiffs' employment is prohibited.

### B. Plaintiffs Will Not Suffer Irreparable Harm Or Hardship

In order to be entitled to a preliminary injunction, Plaintiffs must also make a showing that they "face[] an immediate threat of irreparable harm." *Midgett v. Tri-County Metro. Transp. Dist. of Oregon,* 254 F. 3d 846, 850-51 (9th Cir. 2001). Importantly, the fact that adequate compensatory damages will ultimately be available weighs heavily against a claim of "irreparable" harm. *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

#### 1. The Loss of Earn-Out Claims Are Amenable To Damages.

Plaintiffs claim that their "irreparable harm" consists of being deprived of a "fair chance to reach the milestones for its earn-outs." (Motion, at p. 8.) However, because the earn-outs are monetary in nature, they constitute precisely the type of financial injury that is *not* recoverable in an injunction. "Mere financial injury ... will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." *Goldie's Bookstore, Inc. v. Superior Court*, 739 F. 2d 466, 471 (9th Cir. 1984); *see also San Francisco Care Ctr. v. Jackson*, 2006 WL 3591135, *2 (N.D. Cal. Dec. 11, 2006) (Wilken, J.) (denying motion for temporary restraining order on the ground that adequate compensatory relief will be available in the litigation). Further, the fact that Plaintiffs "earn-out" damages may be difficult to prove does nothing to alter this analysis. *Woolley,* 227 Cal. App. 3d at 1535 ("the mere fact that the precise amount of damages may be difficult to prove does not provide the basis for injunctive relief.") (internal citations omitted). Indeed, the fact that Plaintiffs' claims (if proven) can be remedied through a damage claim is nowhere better demonstrated than by the Prayer for relief set forth in Plaintiffs' Complaint, as well as in the precise calculation provided by Plaintiffs of the year two ($5 million) and year three ($4 million) earn-outs to which they claim entitlement. (Complaint,

---

continue the "at will" employment of Plaintiffs regardless of any action -- illegal, unethical or otherwise impermissible -- undertaken by Plaintiffs. However, this is precisely what the injunctive relief sought would allow.