Daniel J. Herling (SBN 103711)
Keller and Heckman LLP
50 California Street, Suite 1500
San Francisco, CA  94111
415.277.5952
415.277.5954

Attorneys for Plaintiffs
EDDY DOMINGUEZ, NEWTON BUI,
TAN NGUYEN and LICINO VALINO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDDY DOMINGUEZ, NEWTON BUI, TAN NGUYEN and CLICINO VALINO,<br><br>Plaintiffs,<br><br>vs.<br><br>ANDREW CORPORATION,<br><br>Defendant. | Case No. C 07-04679 CW<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: November 29, 2007<br>Time: 2:00 p.m.<br>Dept: Courtroom 2, 4th Floor<br><br>Complaint Filed:  September 11, 2007 |

## I.    INTRODUCTION

The Court is respectfully reminded of what plaintiffs are requesting through their Motion for Preliminary Injunction.

First, an Order that prohibits Andrew Corporation from taking any further action that would interfere with the agreed upon Operating Agreement (also known as Operational Plan of Record). (Plaintiffs' Memorandum of Points and Authorities in Support of Ex Parte Application for Temporary Restraining Order on Order to Show Cause Re Preliminary Injunction, 1:3-5)

Second, a specific request that Andrew Corporation be precluded from terminating the current employment of the plaintiffs due to plaintiffs filing the instant Complaint against Andrew Corporation

(*Id.* at 1:5-8)[1]

Andrew Corporation, as it attempted to do in its Motion to Dismiss the Complaint in Favor of Arbitration [2] tries to recharacterize the petition of the plaintiffs by invoking selected language of the separate Stock Purchase Agreement ("SPA") and by painting plaintiffs' request regarding termination of employment as a request for a carte blanche right for continued employment at Andrew Corporation.

Andrew Corporation's characterizations are <u>not</u> the claims of the plaintiffs.

A review of the SPA, as well as a review of the evidence before this Court, including, but not limited to the fact that the Declaration of Douglass Hall is misleading, will convince the Court that the Preliminary Injunction should be issued as the plaintiffs will succeed on the merits of their claims (fraud, interference, and breach of the Operating Agreement) and will suffer irreparable harm if it is not issued.

## II.   ANDREW'S RELIANCE ON THE INTEGRATION CLAUSE IN THE SPA IS MISPLACED

The SPA at Section 10(i), entitled Amendments and Waivers, sets forth the following, in pertinent part:

> No amendment of any provision of the this Agreement shall be valid unless the same shall be in writing and signed by Buyer and the Sellers.

Pursuant to Section 10(h), the Stock Purchase Agreement shall be governed by and construed in accordance with the laws of the state of Delaware. It is a fundamental precept of Delaware contract interpretation that a "court must interpret contractual provisions in a way that gives effect to every term of the instrument, and that, if possible, reconciles all the provisions of the instrument when read as a whole." (*See Council of Dorset Condo. Apts. v. Gordon,* 801 A.2d 1, 7 (Del. 2001)).

### A.   The Operating Agreement Is Separate From The SPA And Not An Amendment To It

The Operating Agreement is a separate document and not an amendment of any provision of the SPA. Nowhere in any pleading or any declaration submitted to the Court by either side is it alleged that the Operating Agreement amends the SPA. In fact, Andrew Corporation has taken shifting positions. In

---

[1] As set forth in the Eighth and Ninth Causes of Action of the First Amended Complaint, Andrew has engaged in tortious conduct against plaintiff Dominguez relating to the filing of the Complaint, *i.e.,* specifically, the expressed promised retaliatory behavior by Andrew if this Complaint was filed by the plaintiffs in the form of a death threat made by Richard DeFelice on behalf of Andrew Corporation.

[2] Scheduled to be heard concurrently with this Motion on November 29, 2007.

its Motion to Dismiss the Complaint in Favor of Arbitration, Andrew alleges that it is "unaware of any such subsequent agreement" (Motion to Dismiss, 5:2-3), and in the Opposition to the Preliminary Injunction, Andrew alleges that there is no subsequent signed written agreement amending the terms of the SPA. (Andrew's Opposition, 1:27-28). Plaintiffs' assertion has been consistent. The Operating Agreement, as alleged in both the original Complaint and the First Amended Complaint was never implemented despite Andrew Corporation's promise to do so.

The evidence, as embodied in Exhibits A and B to the Supplemental Declaration of Eddy Dominguez clearly sets forth that Andrew Corporation and its directors of the ACMC Business Unit, including John Baker and Richard DeFelice not only were aware of the Operational Plan of Record in June 2006, but were actively engaged in the drafting of it. Mr. Hall's claim in his declaration that "Andrew has not entered into any signed written agreement that obligates Andrew to provide any certain headcount or operating capital to ACMC" may be technically true but is misleading. Hall's Declaration does not even address the fact that though perhaps not signed, the Operating Agreement does not amend the SPA, but rather is a separate agreement. As is alleged in the Complaint and the purported First Amended Complaint, Andrew insisted that any operating agreement not be developed until after the closing of the SPA. (O.A. at ¶ 16, FAC at ¶ 16.) The facts, as alleged, clearly indicate that the Operating Agreement was not intended to amend the SPA. Furthermore, if the Operating Agreement was an amendment to the SPA, Andrew Corporation has not only failed to submit any credible evidence to the Court on this issue, but has also taken different positions as to whether the Operating Agreement even exists.

**B.    Parol Evidence Rules Does Not Apply.**

An exception exists to the Parol Evidence Rule where "promissory fraud" is alleged and the false premise is independent of or consistent with the written instrument at issue. Cal. C. Civ. Pro. 1856(g). Here, fraud related to Andrew's misrepresentations to the plaintiffs that it would follow the Operating Agreement and would devote headcount and capital resources to plaintiffs. (O.A. at ¶ 35, FAC at ¶ 36).

In fact, as is set forth in the Supplemental Declaration of Eddy Dominguez, Richard DeFelice, Director of After Market Services of ACMC and Dominguez's direct manager, advised Dominguez on or about May 2006 that the SPA does not matter; the only thing that matters is the Operational Plan of

Record.  The only way for the plaintiffs to get paid the earn-out was for Dominguez and his team to achieve the goals in the Operational Plan of Record.  DeFelice reiterated this position in a subsequent conversation with Dominguez wherein DeFelice informed Dominguez that the directive relating to the significance of the Operational Plan of Record came from John Baker, vice president and officer of Andrew Corporation and the direct manager of DeFelice.  See Dominguez Declaration, ¶¶ 4 and 5.[3]

In *Bank of America v. Lamb Finance Company* (1960) 179 Cal.App.2d 498, 502, the Court stated:

> A distinction has been made by our courts in cases in which the fraud sought to be proved consists of a false promise.  They have held that if, to induce one to enter into an agreement, a party makes an independent promise without intention of performing it, this separate false promise constitutes fraud, which may be proven to nullify the main agreement; but if the false promise relates to a matter covered by the main agreement and contradicts the various terms thereof, any evidence of the false promise directly violates the parol evidence rule and is inadmissible.

Here, plaintiffs are not arguing that Andrew Corporation made false promises relating to the terms and conditions of the SPA, but rather, once declaring that the Operational Plan of Record (Operating Agreement) was the controlling document in order for plaintiff to get paid the earn-out, it then failed to implement the plan of record that it drafted with the plaintiffs.

Hall's Declaration wherein he attempts to "nuance" the existence of the agreement and its significance is one more example of Andrew's conduct:  Andrew makes promises and/or statements but has no intention of meeting its obligations.

Under either California and/or Delaware law, the courts have imputed the knowledge of and statements made by corporate officers and directors to a seller when the agent was acting within the scope of his authority.  *See Nolan v. Eastern Co.*, 241 A.2d 885, 891 (Del. Ch. 1968); *Dabney-Johnson Oil Corp. v. Walden,* 4 Cal.2d 637 (1932); *West America Finance* Co*. v. Pacific Indemnity Co.,* 17 Cal.

---

[3]  It is anticipated that Andrew Corporation will raise the argument that statements attributed to DeFelice and Baker are somehow hearsay.  This claim has no basis under the Federal Rules of Evidence as statements by officers of a corporation bind that corporation and are not hearsay but rather party admissions.  *See* Fed. R. Evid. 801(d)(2)(D) ("A statement is not hearsay if . . . [t]he statement is offered against a party and is (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."); *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) ("We have held that an admission by an agent within the scope of his employment is admissible.").

App.2d 225 (1936) (court held officers bound corporation where they were acting for corporation in the fraudulent transaction).

Accordingly, Andrew is responsible for the statements and misrepresentations of DeFelice and Baker.

Prior to the filing of this lawsuit, it was clear that both the plaintiffs and Andrew recognized that the Operating Agreement was separate from the SPA. Without any evidence to the contrary, Andrew's argument that the integration clause in the SPA bars any claim regarding the failure of Andrew to meet its promises under the Operating Agreement fails.

### III.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

The claims brought under the original Complaint and the purported First Amended Complaint as they relate to the Operating Agreement are for misrepresentations (both fraud and negligent) and interference (both intentional and negligent). The facts alleged in the Amended Complaint make it clear that plaintiffs will be able to establish the elements of these torts. Andrew Corporation's only response is that there was no signed Operating Agreement. That is not a defense to claims for fraud and interference. Other than a desperate attempt to preclude the testimony of Eddy Dominguez and Edward Davis (See Response to Objections to Declarations filed concurrently with this Motion), Andrew Corporation provides the Court with no evidence that refutes this testimony. Even Hall's nuanced declaration does not account for statements made by Andrew Corporation to plaintiffs, which were false.

### IV.   ANDREW CORPORATION'S DISCUSSION OF THE TERMINATION OF THE EMPLOYMENT RELATIONSHIP IS UNAVAILING

As discussed above, the relief sought by the plaintiffs as it related to its employment was to prohibit Andrew Corporation from terminating the plaintiffs from Andrew Corporation as a result of their filing the instant lawsuit. It is not the broad request as characterized by the plaintiffs. Accordingly, plaintiffs are not asking the Court to force Andrew to work with the plaintiffs, but rather to not terminate them as a result of the filing of this lawsuit, which would prohibit plaintiffs from having an opportunity to meet their earn-out criteria.

### V. THE HARM PLAINTIFFS ARE FACING DUE TO THE CONDUCT OF ANDREW CORPORATION IN FAILING TO MEET ITS OBLIGATIONS UNDER THE OPERATING AGREEMENT IS IRREPARABLE.

The irreparable harm facing the plaintiffs arises out of the Operating Agreement, which is a separate agreement, and which was agreed to by the parties to serve as a tool to assist the plaintiffs to achieve the earn-out targets in the SPA by identifying and documenting the resources necessary to establish those goals as set forth in the SPA at ¶ 2(g).

The harm alleged is not due to a violation of the breach of the SPA, but rather the SPA is applicable to the extent that it sets forth a criteria that governs the earn-out. Section 10(n) of the SPA recognized that the potential for irreparable damage required a specific procedural handling. Plaintiffs urge that the public policy of the law that governs the SPA (Delaware) must be taken into consideration when evaluating the irreparable harm issue.

Under Delaware law, it is recognized that parties can agree when irreparable harm exists. *See True North Communications, Inc. v. Publicis S.A.,* 711 A.2d 34, 44 (Del. Ch. 1997) (Confirming that a contractual stipulation alone can suffice to establish the element of irreparable harm and refusing to entertain a defendant's arguments opposing plaintiff's right to seek injunctive relief based on that provision), aff'd. 705 A.2d 244 (Del. 1997). Additionally, Delaware law has held that the difficulty in quantifying damages has been recognized as a basis for granting preliminary injunctions. *See T. Rowe Price Recovery Fund, L.P. v. Rubin*, 770 a.2d 536, 557 (Del. Ch. 2000) ("[W]here money damages 'may be highly difficult to calculate' preliminary injunctive relief is proper.") (Quoting *Sealy Mattress Co. v. N.J.D. Sealy, Inc.*, 532 A.2d 1324, 1341 (Del. Ch. 1987 3); *Cantor Fitzgerald, L.P. v. Cantor,* 724 A.2d 571, 586 (Del. Ch. 1998) ("Preliminary injunctive relief may be appropriate when plaintiff's damages are difficult or impossible to quantify.").

Here, the fraud and breach of the Operating Agreement will impede plaintiffs' ability to achieve the earn-out payment as is embodied in the SPA. The harm alleged is not due to a violation of breach of the SPA, but rather the SPA sets forth the criteria for the earn-out.

The nature of the ACMC repair business in which the plaintiffs were engaged is such that having certain repair capabilities prior to market need is imperative. In order to develop these capabilities in house, technical resources are needed as part of an up-front investment. The Operational Plan of Record

agreed to by Andrew outlines technical resources needed by skill level to develop this capability. Additionally, business opportunities were also outlined.

Andrew's lack of providing resources has now resulted in ACMC working on developing capability after the market need. This has resulted in limiting business opportunities from Nortel; being apprised that Cingular/ATT is in the process of developing alternative contract bids because no repair service is available from ACMC; and limiting, if not eliminating, ACMC's work with T-Mobil. (See Dominguez Supplemental Declaration at ¶¶ 7 and 8.

## VI.  CONCLUSION

Plaintiffs' Petition for Preliminary Injunction should be granted as it will provide the plaintiffs the opportunity to conduct its business in accordance with the Operating Agreement that had been drafted by and agreed to by Andrew Corporation. Andrew Corporation's attempt to make technical arguments that are not based on any evidence before the Court in an attempt to prohibit plaintiffs from having the opportunity to reach the benefit of its bargain with Andrew should not be condoned by this Court.

The plaintiffs meet the test for a preliminary injunction as they will succeed on the merits of their claims, and if the preliminary injunction is not issued, they will face irreparable harm.

Dated:  November 14, 2007                                  Keller and Heckman LLP


                                                           By: /s/ Daniel J. Herling
                                                               Daniel J. Herling

                                                           Attorneys for Plaintiffs
                                                           EDDY DOMINGUEZ, NEWTON BUI,
                                                           TAN NGUYEN and LICINO VALINO