**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDDY DOMINGUEZ, NEWTON BUI, TAN NGUYEN and LICINO VALINO,<br><br>    Plaintiffs,<br><br>  v.<br><br>ANDREW CORPORATION,<br><br>    Defendant.<br>_____/ | No. C 07-4679 CW<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT; DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION; DENYING DEFENDANT'S MOTION TO DISMISS; AND GRANTING DEFENDANT'S ALTERNATIVE MOTION TO COMPEL ARBITRATION |

    Plaintiffs Eddy Dominguez, Newton Bui, Tan Nguyen and Licino Valino move for leave to amend their complaint and for a preliminary injunction ordering Defendant Andrew Corporation not to violate the terms of the Stock Purchase Agreement between the parties.  Defendant opposes these motions and moves to dismiss the complaint in favor of arbitration or, in the alternative, to compel arbitration and stay these proceedings pending the arbitration decision.  The matter was heard on November 29, 2007.  Having considered oral argument and all of the papers submitted by the parties, the Court grants Plaintiffs' motion to amend the complaint, denies Plaintiffs' motion for a preliminary injunction,

denies Defendant's motion to dismiss and grants Defendant's alternative motion to compel arbitration.

## BACKGROUND[1]

Plaintiffs were formerly employees and the sole shareholders of CellSite Industries, Inc. (CSI).  On April 24, 2006, Defendant acquired CSI by entering into a Stock Purchase Agreement (SPA) with Plaintiffs.  After the acquisition, Plaintiffs stayed on as employees of Defendant.  What had formerly been CSI became a business unit known as ACMC.  Defendant named Richard DeFelice as the director of ACMC; he became Plaintiffs' direct supervisor.

Section 2(g) of the SPA is an "earn-out" provision, whereby CSI's purchase price was made "subject to upward adjustment based on [CSI's] achievement of certain financial performance objectives."  Lacey Dec. Ex. A § 2(g), at p. 9.  For each of the first three years following the execution of the SPA, if CSI achieved specified minimum levels of revenue and operating income, Plaintiffs would be entitled to an earn-out of between four and five million dollars.  The earn-out provision also contains the following clause:

---

[1] The facts in this section are based on the allegations in the complaint, which are deemed to be true for the purposes of the motion, and the Stock Purchase Agreement between the parties.  The Court may properly consider the contents of this agreement because the complaint refers to it.  See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.  Such consideration does not convert the motion to dismiss into a motion for summary judgment.") (internal quotation marks omitted).

2

> The Parties acknowledge and agree that [Defendant] shall have full control and discretion with respect to the decisions related to [CSI], including, without limitation, its operations, budgeting, marketing, and business scope (collectively, the "Buyer Decisions"), and no Buyer Decision nor its effect on [CSI] shall result in any amendment or expectation of amendment by the Parties with respect to any of the terms under this Section 2(g)(iv), and such acknowledgment and agreement represents a material inducement to [Defendant] entering into this Agreement.

Id. § 2(g)(iv), at p. 11. The SPA further contains an integration clause providing, "No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by [Defendant and Plaintiffs]." Id. § 10(i), at p. 48.

In addition, the agreement contains an arbitration clause that states, "[E]ach Party hereto agrees that [] arbitration . . . shall be the sole and exclusive method for resolving any claim or dispute [] arising out of or relating to the rights and obligations acknowledged and agreed to in this Agreement . . . ." Id. § 10(o), at p. 49. An exception exists, however, for "disputes or claims for which injunctive relief is sought (which may be pursued in any court of competent jurisdiction as specified below)." Id. The immediately preceding section expounds on the type of injunction that is contemplated by the exception. Entitled "Specific Performance," it states that:

> [E]ach of the Parties agrees that the other Parties shall be entitled to an injunction or injunctions to prevent breaches of the provisions of this Agreement and to enforce specifically this Agreement and the terms and provisions hereof in any court of the United States or any state thereof having jurisdiction over the Parties and the matter, in addition to any other remedy to which they may be entitled, at law or in equity.

Id. § 10(n), at p. 49.

3

Notwithstanding the language in the earn-out provision vesting in Defendant full control of operational decisions relating to CSI, Plaintiffs allege that, while negotiating the terms of the SPA, they reached an agreement pursuant to which Plaintiffs would maintain some degree of control over certain of CSI's business decisions.  Pursuant to this "Operating Agreement," Defendant also promised to devote "significant resources" to CSI, including by providing adequate "headcount and capital equipment to ensure [CSI's] ability to continue to grow the business," which in turn would enable Plaintiffs to achieve the performance levels required to obtain the earn-outs.  Compl. §§ 18 & 22.

Plaintiffs allege that, even though the Operating Agreement represented a mutual understanding between the parties, Defendant refused to incorporate its terms in the SPA.  They claim that the "Operating Agreement was subsequently drafted by Andrew and Plaintiffs, but was never implemented."  Compl. § 23.  Defendant denies entering into any binding agreement with Plaintiffs other than the SPA.  Plaintiffs point to a spreadsheet printout that appears to set a budget for CSI's operations, but it recites no promises.

Plaintiffs claim that Defendant did not adhere to the terms of the Operating Agreement.  Specifically, since executing the SPA, Defendant has failed to invest the promised resources in CSI; instead, it has placed "a series of obstacles and restraints" on CSI's operations.  Id.  This has made it difficult for Plaintiffs to achieve their revenue and operating income targets, and has placed in jeopardy their ability to obtain future earn-outs, even

4

though they met their goals for year one.

Plaintiffs also claim that, during the negotiation of the SPA, Defendant failed to reveal material information that would have caused them to withdraw from negotiations. In particular, they allege that Defendant was not honest about its plans to be acquired by another company. If they had known about these plans, Plaintiffs would not have gone through with the SPA out of concern that, following the acquisition of Defendant, their unit could be packaged and sold as a way of spinning-off unwanted assets.

Plaintiffs filed their complaint on September 11, 2007. It alleges causes of action for: 1) Breach of the SPA; 2) Fraud and intentional misrepresentation; 3) Negligent misrepresentation; 4) Intentional interference with prospective economic relations; 5) Negligent interference with prospective economic relations; 6) Breach of the implied covenant of good faith and fair dealing; 7) Unjust enrichment; and 8) Declaratory and injunctive relief. The complaint seeks money damages on the first six claims, the imposition of a constructive trust on the seventh claim, and a declaration and injunction on the eighth claim.

After Defendant filed its motion to dismiss in favor of arbitration, Plaintiffs filed a motion for leave to amend the complaint. They submitted a proposed amended complaint with this motion. In the amended complaint, Plaintiffs eliminate their cause of action for breach of the implied covenant of good faith and fair dealing, and add two new claims: intentional infliction of emotional distress and negligent infliction of emotional distress. They also seek a different remedy in connection with their breach

5

of contract claim; they now seek an injunction directing Defendant to comply with the terms and conditions of the SPA.[2]  The factual allegations in the amended complaint are identical to those in the original complaint in all material respects, except that the amended complaint adds new allegations in connection with the new causes of action for infliction of emotional distress.  These allegations relate to threats and remarks that DeFelice allegedly made to Plaintiff Dominguez.

DISCUSSION

I.   Plaintiffs' Motion for Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides, "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served."  A motion to dismiss is not a "responsive pleading" within the meaning of Rule 15.  CRST Van Expedited, Inc. v. Werner Enterprises, Inc., 479 F.3d 1099, 1104 n.3 (9th Cir. 2007); Crum v. Circus Circus Enterprises, 231 F.3d 1129, 1130 n.3 (9th Cir. 2000).

Because Defendant filed a motion to dismiss, not an answer, Plaintiffs may amend their complaint without leave of the Court.  For the purpose of resolving Plaintiffs' motion, however, the Court grants them leave to file the proposed amended complaint.  Insofar as Defendant objects to Plaintiffs' attempt to restyle the

---

[2] The Court notes that Plaintiffs' prayer for relief does not entirely correlate to their causes of action.  For instance, the Court assumes that Plaintiffs intend to seek a constructive trust as a remedy for their sixth cause of action (unjust enrichment), not their fifth cause of action (negligent interference with prospective economic relations), as stated.  The amended complaint also does not state what remedy is sought on the ninth cause of action.

6

complaint so as to make this lawsuit fit more clearly within the exception to the SPA's mandatory arbitration clause, its concerns should be obviated by the Court's decision to compel arbitration.

II. Plaintiffs' Motion for a Preliminary Injunction

To obtain a preliminary injunction, the moving party must establish either: (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in the moving party's favor.  See Baby Tam & Co. v. City of Las Vegas, 154 F.3d 1097, 1100 (9th Cir. 1998); Rodeo Collection, Ltd. v. W. Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987).  The amended complaint requests an injunction on Plaintiffs' claim that Defendant breached the SPA; on this motion, Plaintiffs also seek an injunction forcing Defendant to comply with the Operating Agreement.  Because a preliminary injunction is only available if injunctive relief is appropriate in the first instance, the question before the Court is not whether Plaintiffs are likely to succeed in proving that Defendant breached the SPA or the Operating Agreement, but whether they are likely to succeed on their claim for injunctive relief as a remedy for any such breach.

In their application for a preliminary injunction, Plaintiffs state that the injunction sought would prohibit Defendant "from taking any further action that would interfere with the agreed-upon Operating Agreement [] including, but not limited to, terminating the current employment of the Plaintiffs."  While this is phrased as a negative injunction, Plaintiffs actually seek the remedy of specific performance.

7

An award of money damages is the usual remedy for a breach of contract. Cal. Civ. Code § 3274. Specific performance, in contrast, is an equitable remedy that is available only under certain circumstances. To warrant specific performance, a contract must be clear, definite, and certain. Magee v. Magee, 174 Cal. 276, 280 (1917). Courts will "only decree specific performance where the subject-matter of the decree is capable of being embraced in one order and is immediately enforceable. [They] will not decree specific performance when the duty to be performed is a continuous one, extending possibly over a long period of time and which, in order that the performance may be made effectual, will necessarily require constant personal supervision and the oversight of it by the court." Pac. Elec. Ry. Co. v. Campbell-Johnston, 153 Cal. 106, 117 (1908). Courts may not specifically enforce an obligation to employ another in personal service. Cal. Civ. Code § 3390(2). Nor may they specifically enforce an agreement that is not "sufficiently certain to make the precise act which is to be done clearly ascertainable." Cal. Civ. Code § 3390(5).

Specific performance of either the SPA or the Operating Agreement, as they relate to the future operations of CSI, is clearly not available under settled principles of law. In the first place, except for the spreadsheet printout, the terms of the Operating Agreement have not been disclosed to the Court with any degree of precision. There would thus be no way to evaluate Defendant's compliance with a preliminary injunction enforcing these terms, and the supplied spreadsheet contains no promises capable of being enforced. More importantly, even if the details

8

of the Operating Agreement were completely known and sufficiently clear, it still allegedly requires Defendant to make a long-term, continuous investment of capital and human resources.  A mandatory injunction requiring such investment is not capable of immediate enforcement and would require oversight over a long period of time. In addition, an injunction requiring Defendant to continue to employ Plaintiffs is barred by statute.

For these reasons, specific performance is not a remedy available to Plaintiffs, even if they are ultimately able to show that Defendant breached the SPA or the Operating Agreement. Accordingly, their request for a preliminary injunction is denied.[3]

III. Defendant's Motion to Compel Arbitration

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., written agreements that controversies between the parties shall be settled by arbitration are valid, irrevocable, and enforceable.  9 U.S.C. § 2.  A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the district court which would, save for the arbitration agreement, have jurisdiction over that action, for an order directing that arbitration proceed as provided for in the agreement.  9 U.S.C. § 4.  If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in

---

[3] Because, even assuming the truth of the facts alleged, Plaintiffs are not entitled to injunctive relief, the Court need not determine whether they will be irreparably harmed by Defendant's continued breach of the SPA or the Operating Agreement. Nonetheless, the Court notes that Plaintiffs allege no more than monetary damage.  This kind of harm is capable of being redressed by an award of damages, and thus is not irreparable.

9

1  issue, the court shall make an order directing the parties to
2  proceed to arbitration in accordance with the terms of the
3  agreement." Id.  The FAA reflects a "liberal federal policy
4  favoring arbitration agreements." Gilmer v. Interstate/Johnson
5  Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem.
6  Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).

7      A district court must compel arbitration under the FAA if it
8  determines that: 1) there exists a valid agreement to arbitrate;
9  and 2) the dispute falls within its terms. Stern v. Cingular
10 Wireless Corp., 453 F. Supp. 2d 1138, 1143 (C.D. Cal. 2006) (citing
11 Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th
12 Cir. 2000)).  Here, it is undisputed that the parties entered into
13 a valid agreement to arbitrate.  Thus, the only question is whether
14 the dispute that is the subject of this lawsuit is covered by the
15 terms of that agreement.

16     The language of the SPA's arbitration clause is broad; it
17 provides that arbitration "shall be the sole and exclusive method
18 for resolving any claim or dispute [] arising out of or relating to
19 the rights and obligations acknowledged and agreed to" in the
20 agreement.  Lacey Dec. Ex. A § 10(o), at p. 49.  Plaintiffs argue
21 that, other than their breach of contract claims, their causes of
22 action "do not relate to a breach of the SPA and/or Operating
23 Agreement, but rather relate to misrepresentations, interference,
24 and infliction of emotional distress." Pl.'s Opp. at 4.  It is
25 true that the allegations of infliction of emotional distress do
26 not appear to relate to or arise out of the SPA.  However, the
27 remainder of Plaintiffs' claims concern misrepresentations made in
28

10

connection with Defendant's purchase of CSI, which was consummated by the SPA; and Defendant's failure to invest the promised resources in CSI, despite the SBA's explicit disclaimer that all operational decisions were left to Defendant.  These claims are "related to" the SPA; resolving any of them necessarily requires an examination of the agreement and the negotiations leading up to it. Plaintiffs' contention that the claims actually relate to the Operating Agreement, and thus are separate and distinct from the SPA, is untenable; the Operating Agreement cannot be considered without also considering the SPA's provision vesting authority over operational decisions in Defendant.

The Court's finding that the asserted claims either "arise from" or are "related to" the SPA is not foreclosed by Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458 (9th Cir. 1983), which Plaintiffs cite in support of their position.  In that case, the court found that an arbitration clause covering disputes "arising under" the contract covered only claims involving the interpretation and performance of the contract itself.  However, the court relied on the fact that the phrase "arising under" is narrower in scope than the phrase "arising out of or relating to," the phrase that is used in the SPA here.  Id. at 1464.  Whether or not the asserted claims "arise out of" the SPA, they certainly "relate to" it, and thus fall within the scope of the arbitration agreement.

Because Plaintiffs' claims, other than those for infliction of emotional distress, are related to the SPA, they are subject to mandatory arbitration unless they fall within the exception for

11

claims seeking injunctive relief.  It is true that the amended complaint seeks an injunction ordering Defendant to comply with the terms of the SPA.  However, as discussed above, such an injunction is clearly unavailable to Plaintiffs.  If they were permitted to avoid arbitration simply by requesting injunctive relief in connection with a breach of contract claim, notwithstanding the clear unavailability of such relief, it would eviscerate the arbitration clause.  The Court therefore holds that, in order for a cause of action to be subject to the arbitration carve-out, there must be at least a colorable claim for injunctive relief.  No such claim exists here.

For these reasons, all of Plaintiffs' claims, except those alleging intentional and negligent infliction of emotional distress, are referred to mandatory binding arbitration.  However, the Court declines to dismiss these claims.  The FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.  It is true that "[w]here an 'arbitration clause is broad enough to bar all of the plaintiff's claims since it required the plaintiff to submit all claims to arbitration,' those claims may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)."  Johnston v. Beazer Homes Tex., L.P., 2007 WL 708555, at *2 (N.D. Cal.) (quoting Sparling v. Hoffman Constr. Co., 864 F.2d

12

635, 638 (9th Cir. 1988)). But dismissal is not mandatory and, moreover, because Plaintiffs amended the complaint to add two claims of infliction of emotional distress, the arbitration clause is not "broad enough to bar all" of their claims.

Thus, the Court will stay Plaintiffs' SPA-related claims rather than dismiss them. The Court also severs Plaintiffs' claims for intentional and negligent infliction of emotional distress. These claims are referred to non-binding arbitration for settlement purposes, to be considered in the same proceeding as Plaintiffs' other claims. However, Defendant may also file a motion to dismiss the emotional distress claims from this lawsuit.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for leave to amend the complaint (Docket No. 26), DENIES Plaintiffs' motion for a preliminary injunction (Docket No. 15), DENIES Defendant's motion to dismiss and GRANTS Defendant's alternative motion to compel arbitration (Docket No. 21).

All proceedings related to the first through seventh causes of action in the amended complaint are hereby referred to binding arbitration. All proceedings in this Court concerning these causes of action are stayed pending an arbitration decision. The parties shall file a notice of such decision within ten days of its being issued.

Plaintiffs' eighth and ninth causes of action are severed from their other claims. These causes of action are referred to non-binding arbitration, to be heard along with Plaintiffs' SPA-related claims. However, Defendant may also file a motion to dismiss these

causes of action by December 6, 2007, noticed for hearing on January 10, 2008 at 2:00 p.m.  Briefing on this motion shall proceed according to the deadlines set forth in the Local Rules. The initial case management conference currently scheduled for December 18, 2007 is continued to January 10, 2008, to take place concurrently with the hearing on Defendant's motion to dismiss.

IT IS SO ORDERED.

Dated: 12/4/07

_____
CLAUDIA WILKEN
United States District Judge

14